**POE, Plaintiff-Appellee, v. SHEEHAN et, Defendants-Appellants, SHEEHAN et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24444. Decided July 2, 1958.

Joseph M. Poe, for plaintiff-appellee.
Arter Hadden, Wykoff & Van Duzer, for defendants-appellants.
Hornbeck, Ritter & Victory, for certain defendants-appellees.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered by the Probate Court of Cuyahoga County construing certain paragraphs of the last will and testament of Sheldon M. Holmes as prayed tor in plaintiff's petition.

The petition sets forth that the plaintiff is the successor executor of the last will and testament of Sheldon M. Holmes, now deceased, and that Edith M. Holmes was his surviving spouse who acted as the execu-

trix of her husband's estate from February 1, 1956, until her death on March 19, 1957. The petition further alleges that all necessary parties are before the court; that the will of Sheldon M. Holmes was probated February 1, 1956, and that the provisions of the will of Sheldon M. Holmes, with which we are here concerned, are as follows:

"Third: It is my will and I hereby direct that within the time provided by law after my decease an inventory and appraisement be made of all my estate, except the household goods, furnishings and furniture, and that within one month after the inventory has been approved and the appraisement of the real estate has become conclusive, as provided by the probate law of Ohio, my beloved wife, EDITH M. HOLMES, shall select from my real and personal estate, wherever situated, to the appraisal value of one-half my net estate, those items which shall then comprise that moiety which I give, devise and bequeath to her absolutely and in fee simply for her own exclusive use and enjoyment.

"To the other one-half of my net estate, whether the property be real or personal, or of mixed character, I give, devise, and bequeath my aforesaid spouse, should she survive me, a life estate therein. For the remainder of her natural life she shall have and enjoy the entire income therefrom without being accountable therefor to any person or court. She shall have, and I hereby specifically grant to and confer upon her undiminished by her estate for life therein, the power to bargain and sell, exchange, lease, or encumber by mortgage or pledge, any part or all of the real estate given and granted to my said wife for the term of her natural life; and such of the personal property as she may hold hereunder in like manner she may invest, reinvest, exchange, transfer and transform into other forms of property at such times, in such amounts and for such considerations as she alone may deem satisfactory.

"Fourth: Upon the death of my beloved wife, EDITH M. HOLMES, if she should survive me, I give, devise and bequeath the remainder of the moiety of my estate herein given and granted to her for the term of her natural life equally to the then living children of my daughter, Anna McGinness, to be distributed forthwith to such of them as are then of legal age; and the portions of such as are then minors, for the duration of each one's minority, I give, devise and bequeath to my daughter, Anna McGinness, as guardian, to be held by her as such fiduciary under the laws applicable to guardians of minors either in Ohio or wherever she and her family may hereafter reside.

"Should my said wife predecease me, I then give, devise, and bequeath the entire net remainder of my estate to my daughter's children equally, distributable presently to such as may then be of legal age; the portions of such as are then minors, for the duration of each one's minority I give, devise and bequeath to my daughter, Anna McGinness, as guardian, to be held by her as such fiduciary under the laws applicable to guardians of minors either in Ohio or wherever she and her family may hereafter reside."

It is alleged that the inventory and appraisal of the decedent's estate was approved of record on March 21, 1956; that the appraisal of the property of the estate for inheritance tax purposes was agreed upon

on May 7, 1956, and the tax determined by the court on June 8, 1956, and paid on June 28, 1956. It is further alleged that proceedings to determine Federal Estate Taxes were filed on or about March 10, 1956; that the executrix sold a parcel of real estate (3 80-acre tracts in Seneca County) at auction under the powers of the will on February 2, 1957 for $43,100, and the remaining five parcels of real estate were appraised as follows:

| DESCRIPTION | VALUATION BY APPRAISERS | VALUATION FOR INHERITANCE TAX | VALUATION FOR FEDERAL ESTATE TAX |
|---|---|---|---|
| **Parcel No. 1** Ten Suite brick apartment at 10025 Detroit Avenue, Cleveland. | $36,500 | $46,500 | $36,500 |
| **Parcel No. 2** Six-suite brick terrace, 1372-82 West Clifton Boulevard, Lakewood, Ohio. | 45,000 | 50,500 | 45,000 |
| **Parcel No. 3** Two-family frame dwelling, 2112 Belle, 14551 Athens Ave, Lakewood, Ohio. | 20,000 | 20,000 | 20,000 |
| **Parcel No. 4** Two-family frame, side by side dwelling 1480-82 Lakewood Avenue, Lakewood. | 17,000 | 17,000 | 17,000 |
| **Parcel No. 5** Residence at 1485 Alameda Avenue, Lakewood, Ohio. | 12,000 | 12,000 | 12,000 |
| **Parcel No. 6** Farm comprised of three 80-acre parcels in Melmore, Eden Township, Seneca County, Ohio. | 24,000 | 32,000 | 43,100 (cash equivalent) |

It is then alleged that the personal property of the estate amounted to $61,025.00 and that after the payment of debts and taxes, there remained about $68,000. (This balance includes the money received from the sale of the farm.) It is further alleged that the widow made her election to take under the will on May 17, 1956, and on November 27, 1956, she specifically elected to take certain shares of corporate stock of the value of $5451.63, and elected not to take the Seneca County real estate as a part of the one-half of the estate willed to her in fee simple but to sell such property under the powers of sale granted her under the provisions of the will. It is alleged that no other declaration of her intentions was made nor was any specific election under item three of the will filed in the Probate Court before her death.

The petitioner seeks answer to the following questions:

"1. Has the original election of the surviving spouse, Edith M. Holmes, so far established her intention to take under the will that her personal representatives can now make a selection of assets, nunc pro tenc?

"2. Because of the aforesaid action, has the guardian-designate of the three minor grandchildren, Anna McGuinness, the right to make a selection of the moiety of the residuary estate which has now passed to them?

"3. Before the distribution of the remaining assets, shall the estate of Sheldon M. Holmes be charged with the payment of real estate taxes payable in the year 1957 upon any of said parcels of real estate, and upon which ones?

"4. If the selection of their respective shares of the remaining assets cannot be made by either the personal representatives of the surviving spouse or the guardian-designate of the minor grandchildren, by what standards shall the petitioning Successor Executor be guided in apportioning the property between the interested parties hereto?

"5. Would the stipulation that the portions for the minors be held by the guardian-designate 'under the laws applicable to guardians of minors' so limit the class of property to be held in guardianship that the one-half of the residuary estate distributable to the minors' use should be first converted to cash and then paid over to the guardian?"

The case was tried upon stipulations of fact filed with the papers in the case. Such stipulations included the facts as pleaded in the petition and the additional facts that on February 8, 1957, Edith M. Holmes, as executrix, purchased insurance policies for fire and extended coverage in her name on the six family terrace at 1372-82 West Clifton and on the family dwelling at 1485 Alameda Avenue, both in Lakewood, and that she purchased like insurance in the name of the estate of Sheldon M. Holmes on the ten family apartment at 10025 Detroit Avenue, the two family dwelling at 2112 Belle Avenue and the two-family dwelling at 1480-82 Lakewood Avenue. Also on the same date, she purchased "Owners,' Landlords' and Tenants' Liability Coverage," both in her own name and that of the estate for 10025 Detroit Avenue, 1372-82 West Clifton Blvd., 2112 Belle Avenue and 1480-82 Lakewood Avenue.

The court by its journal entry of December 7, 1957, found:

"The Court further finds that the testator, Sheldon M. Holmes, died on January 14, 1956; that his will containing the foregoing provisions was admitted to probate on February 1, 1956; that the Inventory and Appraisement was filed on March 1, 1956, and was approved by this Court on March 21, 1956, thereby becoming final and conclusive; that the one month period within which Edith M. Holmes, the testator's surviving spouse, was directed to make a selection from testator's real and personal estate 'to the appraisal value of one-half of my net estate' commenced to run on March 21, 1956, and expired on April 21, 1956; that the surviving spouse made no selection of real or personal property within said period of time and that therefore no real or personal property passed to her under the first paragraph of the Third clause of the testator's will. The Court further finds that on May 17, 1956, Edith M. Holmes, as sur-

viving spouse, elected to take under the will. The Court further finds that the will contains no residuary provision applicable to the property referred to in the first paragraph of the Third clause; that, therefore, the testator died intestate as to one-half of his net estate and that this property passed to the persons entitled thereto under the law of descent and distribution, to wit: one-half to testator's surviving spouse, Edith M. Holmes and one-half to testator's daughter, Anna McGinness.

"The Court further finds that under the second paragraph of the Third clause of the will, the other one-half of testator's net estate was given to Edith M. Holmes for life, and that under the Fourth clause of the will, said one-half of testator's net estate upon the death of said Edith M. Holmes, passed equally to the then living children of testator's daughter, Anna McGinness, to wit: John R. McGinness, Jr., Mary Anne McGinness, and Thomas G. McGinness; that distribution was to be made to said Anna McGinness as Guardian on behalf of any of her said children who are minors, and that said children who are minors, (sic) and that said John R. McGinness, Jr., Mary Anne McGinness and Thomas G. McGinness are all minors. * * *"

From this judgment, the appellant claims the following errors:

"1. The Probate Court erred in holding that Article III of decedent's will contained a condition.

"2. The Probate Court erred in holding that the condition which it found in Article III had not been met."

The basic rule to be followed in the interpretation of a will is to ascertain and give full effect to the intention of the testator as evidenced by the word structure of his will unless his expressed intention is contrary to law. Such meaning must be found from the text as it has been written and where there is any ambiguity, guidance may be had by giving consideration to the surrounding circumstances. One of the basic concepts of the law of wills is to make every reasonable effort to avoid intestacy where the decedent has expressed his wishes for the succession of his property in a properly executed will. These rules are so fundamental that the citation of authorities seems unnecessary.

We, therefore, come to a consideration of the errors claimed in this case.

The first question presented is whether or not the Probate Court Committed error in holding that the right of the widow to select as her share of the property in the estate of her husband up to one-half of its value, based on the appraised value, was limited to the exercise of such right within the period of one month from the date when the inventory and appraisal became conclusive; that is, that making the required selection within the period of one month was a condition precedent to her right to share in the estate under the first paragraph of item "Third" above quoted. We hold that such conclusion and the judgment founded thereon, as shown by the uncontroverted facts, constituted prejudicial error to the rights of the widow, and does not correctly state the wishes of the testator to be found from the terms of the will.

There is no hint in the stipulations of fact that the property involved was other than that acquired by purchase. Ancestral property is not here involved. It must follow, therefore, that the assets of the

estate of the testator were the lifetime accumulation of the testator and his wife. The efforts of each, the husband and wife, contributed to its accumulation. The deceased had one daughter by a prior marriage, Anna McGinness. The plan, as clearly indicated by paragraphs or items three and four of the will, was that after appraisal, the wife was to have one-half of the property of the estate to be selected by her and the children of the daughter of the remaining half, subject to his wife's life estate in such property.

Where the will provided that the testator's widow "shall" make the selection of the one-half she desires as her property within one month from a fixed date, the fact that she did not give or publish notice of the property selected by her under this provision of the will, does not revoke or make ineffective the testatmentary gift to her. Such gift was not one dependent on a condition precedent. Even though the word "shall" was used, its effect here was directory and not mandatory. Any other conclusion would be unwarranted under the circumstances of this case. If it is held that the widow's failure to select the property she desired within the claimed limitations of time would result in such property to which she would have been entitled passing under the intestate laws of succession, while her life estate as to the remainder would be good under the will, the question must be asked as to what property is to be considered as being subject to her life estate with remainder over to the grandchildren? The widow's selection of the property that was to pass to her would be absolutely necessary to determine what property was left to her under paragraph two of item three and item four of the will. Without such selection, it would be impossible to identify the property that would be subject to the life estate and that which the court held to pass by intestate succession. So it is clear that if the time limit placed on the widow's selection was a condition precedent to the widow's right to take under the will and the widow failed to act within the limitation, all of the property dealt with in item three and item four of the will would be released from the provisions of the will and pass to the next of kin as provided by law. With the complete plan of the will in mind, the testator certainly did not intend such result. Inconsequential delay beyond the period of one month in making her selection was not intended to bar the widow from her full inheritance. This must have been the court's conclusion at the time she elected to take under the will in the presence of the court after instructions by the court or referee as provided in §2107.43 R. C., as amended effective 10/16/53, which reads:

"* * * When the election is made in person before such judge or referee (as was done here), the judge or referee shall explain the will, the rights under such will, and the law, in the event of a refusal to take under the will."

The time schedule contained in the court's journal entry was that the appraisal became conclusive on March 21, 1956 and that the claimed limitation for selection by the widow under item three of the will was April 21, 1956. The transcript shows that the widow appeared personally before the court on May 17, 1956, at which time she elected to take under the will. It could not be reasonably concluded that if the widow was

told by the court or the referee that her right to select one-half of the estate, under the provisions of the will, was then lost for failure to make her selection, that she would have elected, under such circumstances, to take under the will, unless, of course, she had already made such selection.

The provision of the will, giving the right to the widow to select one-half of her husband's estate in fee simple as her property, after appraisal, was unquestionably devised by the testator for his wife's benefit. He gave her the right to choose between real and personal property in his estate and to select such of his real estate holdings as to her would be preferable as of the date when she would succeed to his property. This right for her benefit and the limitation of time within which to make her selection was not intended to circumscribe her right to share in his estate as set out under the first paragraph of item three of the will. The time for making the selection was directory only and we so hold.

That the widow did indicate a selection of specific property within a reasonable time under the first paragraph of item three of the will is clearly evident by the stipulations of fact. It is argued by the appellees seeking to sustain the judgment that this question, being one of fact and having been decided by the trial court against the appellant, that this court cannot disturb such finding unless it is found to be against the manifest weight of the evidence. Upon the record in this case this claim cannot be sustained: The case was tried entirely on stipulations of fact so that, the facts having been agreed upon, no question of the weight of the evidence was before the court. The Probate Court's function was to apply the law to the facts agreed upon and the only function of this court is to determine whether the court's conclusions of law are supported by the agreed facts.

The question of the manner in which the widow should indicate her selection, and to whom, is not provided for in the will. She was appointed by the court as executrix of her husband's estate as directed by him in his will. There was no requirement for a public notice of an election and no other person had any immediate rights which were affected by her wish in the matter. Having elected to take under the will after the passing of the day of the supposed limitation would be some evidence that she had made the selection. The record also shows that on February 8, 1957, as executrix, she purchased fire and liability insurance on the five remaining properties. As to her home on Alameda Avenue, appraised at $12,000, and the six family terrace on West Clifton Boulevard, appraised at $45,000 ($50,000 for inheritance tax purposes), she had the policies issued in her name while the others were made out in the name of the estate. She also, on November 27, 1956, elected to take shares of stock in five corporations valued at $5451.63. It must be presumed, since no other selections are shown in evidence as represented by the record and the fact that there was no other property except cash, that she must have intended to take the balance in money It would also seem, in this connection, that the appraisal of the appraisers appointed by the court, as provided by law, to return an in-

ventory and appraisement of the estate should be the value to be given to the terrace selected by the widow rather than the value fixed by the state for inheritance tax purposes so that the value of the specific property selected by her would be $62,451.63. The value due in money would, therefore, be approximately $38,000.

For the foregoing reasons, the judgment of the Probate Court is reversed and final judgment entered in accordance with this opinion.

HURD and KOVACHY, JJ, concur.