ALEXANDER WHEELER & another, trustees, *vs.* MARY E. KENNARD, administratrix, & others.

Suffolk.    March 7, 1962. — June 4, 1962.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Devise and Legacy,* Income beneficiary, Residue.

Under a will establishing a trust and directing payment of the income to the testatrix's nephew during his life and on his decease payment of one third of the income to his wife during her life and payment of the remaining income during her life, and the whole thereof thereafter, to the nephew's two sons or their issue by right of representation or the survivor of them, and providing that the trust should terminate on the death of the nephew, his wife, and his sons and that the trust principal should then be paid to the sons' issue, or, if there should be no such issue, to the testatrix's heirs determined as of that time, but not disposing of the two thirds of the trust income in the event, which occurred, of the deaths in sequence of one son without issue, of the nephew, and of the other son without issue, all survived by the nephew's wife, the two thirds of the income should be paid to the residuary legatees from the death of the survivor of the sons until the death of the nephew's wife.

PETITION filed in the Probate Court for the county of Suffolk on October 13, 1960.

The case was heard by *Keville,* J.

*Ralph S. Brown, Jr.* stated the case.

*Arthur D. Fowler* for Mary E. Kennard, administratrix.

*Paul B. Sargent* for Margaret Coppin Kennard.

*A. Leavitt Taylor* (*Darius M. Nickerson* with him) for Edith B. Clinton & others.

*Henry B. Shepard, Jr.* for Ellen B. Clark.

WHITTEMORE, J.   These are appeals from a decree of the Probate Court for Suffolk County construing Article Seventh of the will of Isabella H. Adams.   Article Seventh left personal property in trust to pay the net income "to my nephew Waldo Kennard . . . during his life and on his decease to pay one-third of the net income to his wife, Margaret . . . during her life and the residue of said net income and the whole after the death of said Margaret . . . to be paid in equal shares to Adams Kennard and Harry Perkins Kennard, sons of said Waldo Kennard, or the survivor of them; provided, however, that if either said Adams . . . or Harry . . . shall have died leaving issue then surviving, the surviving issue of such deceased son shall take the parent's share of income by right of representation." Article Seventh also provided that the trust should terminate on the death of Waldo, Margaret, Adams, and Harry and that the principal should "be paid to the then surviving issue of Adams . . . and Harry . . . taking by right of representation, [or] if there be no such surviving issue the same to be paid to those persons who would be entitled to receive the same if I had then died intestate a resident of Massachusetts possessed of the same as my own property."

The testatrix, Isabella, died on April 1, 1938.   Waldo died in 1946.   His widow, Margaret, is living.   Adams predeceased Waldo leaving no issue.   Harry died on December 20, 1959, intestate, without issue, survived by his widow, Mary.   Thus the stated time for termination of the. trust under Article Seventh has not arrived, but no beneficiary specified therein to receive two thirds of the income is now living.

The final decree orders in respect of the trust under Article Seventh that no portion of the principal now be distributed, that from and after December 20, 1959, one third of the net income be paid to Margaret until her death, and that for the same period two thirds of the net income be paid to the residuary legatees under Article Tenth of the will, their identity and shares having been fixed by the decree of that court on March 29, 1940.

The appeals are by Mary, administratrix of Harry's estate, who contends that the two thirds of income was vested in Harry at his death and is thus payable to her as administratrix, and by Margaret who contends that there is an implied intent that Margaret, a member of the class of persons benefited by Article Seventh, take the income ahead of persons who, to Isabella, were "unknown heirs."

The residuary legatees under Article Tenth were the next of kin of Isabella determined as of the date of her death.[1] The fractional interests of certain next of kin of Isabella, if determined as of December 20, 1959, would be greater than under the residuary clause. Hence it was contended in the Probate Court that, in view of the gift over of the principal under Article Seventh to next of kin, the interim beneficiaries of the two thirds of income are Isabella's next of kin as of the date of Harry's death, December 20, 1959. But although claims of appeal were filed on behalf of next of kin claiming under Article Seventh, these appeals have been withdrawn, and those next of kin interested to put forward claims under Article Seventh state in their brief that they "have acquiesced with the decree . . . and do not now object to the same with reference to distribution of said income." Their brief, however, being the brief of all the next of kin as of December 20, 1959, requests us to consider, "in so far as . . . [we] may properly do so," in the event that we should hold error in the order below, whether the intent of the testatrix will not best be carried out "by ordering that two-thirds or some other portion of the trust fund . . . be terminated as of December 20, 1959."[2]

---

[1] Article Tenth of the will gave the residue in trust to pay the income to Isabella's sister Julia during her life, and on her death to pay the principal as Julia might appoint by will and in default thereof "to those persons who would then be entitled to receive the same if . . . Julia . . . had died intestate a resident of Massachusetts possessed of the same as her own property." Julia died in 1935.

[2] Such a holding would cut off the rights under the decree of those claiming under Walter B. Perkins, a nephew of Isabella, who died on October 4, 1951, without issue, represented herein by the respondent Ellen B. Clark. She has waived no rights under the Probate Court decree.

The fundamental rule is ''to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of the circumstances known to him . . . and to give effect to that intent unless some positive rule of law forbids.'' *Fitts* v. *Powell,* 307 Mass. 449, 454. *Hill* v. *Aldrich,* 326 Mass. 630, 632.

We discern no intent in Article Seventh to dispose of the two thirds of income of the continuing trust in the event that Adams and Harry should predecease Margaret leaving no issue. We conclude that the possibility that Margaret would survive Adams and Harry and their issue was not envisaged.

Isabella's two relevant intents disclosed in Article Seventh conflict because of her failure to provide for what has happened. There is shown an intent that, subject to Margaret's right to one third of the income, upon the death of Waldo, and of Adams and Harry, without issue, Isabella's next of kin should take all the principal.

The conflicting intent to provide for Margaret to the extent of one third of the income, by continuing the trust of all of the fund for her life, is express. Conceivably, the conflict could be resolved by setting off one third of the principal for Margaret and distributing the balance, as suggested by those who are the next of kin as of Harry's death. See *Ames* v. *Hall,* 313 Mass. 33. This, however, would not give Margaret precisely what Article Seventh provides, and it would determine the next of kin as of a date prior to the date fixed by Article Seventh. This, we hold, is not a case for such reconstructive action. The possibility of adopting it does not establish error in the decree below.

Mary claims as Harry's administratrix under the principle enunciated in *Harrison* v. *Marden,* 298 Mass. 148, 150, and applied in *Hussey* v. *Hussey,* 323 Mass. 533, 535, that where an annuity or payment of income, whether to issue of the testator (*Harrison* case) or a person not a descendant (*Hussey* case), ''is not limited in terms to the life of the beneficiary but is limited to some other lawful period of

time, and [if] before the expiration of that period the beneficiary dies, his personal representative is entitled to the income for the remainder of the period'' (*Harrison* case, p. 150). In the *Hussey* case the gift in trust was to R and M or the survivor of them for the life of P. R and M had both died (R first) and P lived. The income was ordered paid to M's personal representative for the life of P.

We think the principle applied in the *Hussey* case is inapplicable. The gift over to issue shows an intent to limit the gifts for Adams and Harry to their lives. *Boston Safe Deposit & Trust Co.* v. *Northey,* 332 Mass. 110, 113.

The rule is applicable that where a construction in support of a claimed interest depends upon conjecture it may not be adopted. *Bailey* v. *Bailey,* 236 Mass. 244, 247–248. *Loring* v. *Dexter,* 256 Mass. 273, 278. *Fiduciary Trust Co.* v. *First Natl. Bank, ante,* 1, 12. Inasmuch as Article Seventh is not the residuary clause, Mary is not helped by the rule of construction that a testator is presumed to intend to dispose of all his property by the will. See *Loring* v. *Clapp,* 337 Mass. 53, 59, and cases cited.

We agree with Mary that Article Seventh shows that it was not in express contemplation that any interest of the trust thereunder would pass under the residuary clause. But that is not a basis for determining that Isabella had an intent in respect of the events which have developed. There is, of course, the manifest intent of the residuary clause that all interests not otherwise disposed of, for whatever reason, pass thereunder. No other intent being shown this intent prevails.

There is nothing in Margaret's claim to the entire income for her life.

Accordingly, the decree of the Probate Court is affirmed. Costs and expenses of this appeal may be allowed in the discretion of the Probate Court.

*So ordered.*