OLD COLONY TRUST COMPANY, trustee, *vs.* NEW ENGLAND MERCHANTS NATIONAL BANK OF BOSTON, executor, & others.

Middlesex.   May 4, 1965. — June 8, 1965.

Present: WILKINS, C.J., CUTTER, KIRK, & SPIEGEL, JJ.

*Devise and Legacy,* Remainder, Class gift.   *Trust,* Trustee's discretion.

Upon consideration of a will as a whole creating a trust of the testator's stock in his manufacturing company and containing a provision that upon a distribution of the trust property free of trust at the decease of the testator's wife "Forty-five per cent thereof . . . [should] be divided share and share alike between . . . [two directors of the company and its clerk] and the balance thereof . . . [should] be divided share and share alike between" named employees, the words "the balance thereof" meant fifty-five per cent of the trust property and did not include any part of the forty-five per cent, and where it appeared that on the death of the testator's wife the two directors and the clerk had previously died, the forty-five per cent did not go to the employees by reason of those words, but, under a later provision indicating the testator's intention as to the ultimate disposition of the trust fund, the shares of one of the directors and the clerk in the forty-five per cent went equally to the employees or their respective heirs and to the heirs of the second director, and the share of the second director in the forty-five per cent went to his heirs.   [309–310]

Where, after the execution of a will creating a trust of the testator's stock in his manufacturing company and providing for ultimate distri-

bution to persons associated with the company or their heirs, a codicil added as an ultimate beneficiary a new employee of the company "provided, however, that said . . . [employee] shall not share in any distribution . . . in case my trustee in its [the trustee's] discretion shall deem his participation thereunder not to be for the best interest of the trust fund," and the trustee in a petition to the Probate Court for instructions concerning final distribution stated that it was "unaware of any circumstances whereby participation of . . . [the employee] . . . would not be for the best interests of the trust fund" and had decided to allow the employee to participate, but brought to the court's attention a Federal court judgment against the employee in an action by a corporation succeeding the testator's company for breach of fiduciary duty to the successor corporation about a decade after the trustee had "disposed of all securities" in the successor corporation acquired by the trust in liquidation of the testator's company, it was held that a decree of the Probate Court on the petition was erroneous in excluding the employee from participating in the distribution.   [310–312]

PETITION for instructions filed in the Probate Court for the county of Middlesex on July 25, 1963.

The case was heard by *Leggat, J.*

*Richard D. Leggat* stated the case.

*Frank B. Wallis* (*George F. Bernardin* with him) for New England Merchants National Bank of Boston, executor.

*Alfred W. Fuller* (*Joan D. Cottle* with him) for Edna S. Longden.

*Reuben Goodman* for Newton National Bank, administrator (*Thomas S. Chittenden,* for Lida M. Savory, with him).

*Daniel B. Bickford* for Charles W. Bartlett, executor.

*Robert W. Meserve* (*Nathan Newbury, III,* with him) for Lola P. Buckley & others.

*Walter G. Van Dorn* (*Roger B. Tyler* with him) for Alice Wedger Bond & others.

*Thomas H. Dowd, Jr.* (*Marcus Morton* with him) for Minerva C. Kelly & others.

*Jay E. Orlin* (*Marvin Sparrow* with him) for E. Jackson Whitman.

*Arthur B. Shepherd* of North Carolina, for Otto Bemisderfer, *Richard W. Mirick* for Worcester County National Bank, administrator, and *Richard W. Dearborn* for Bessie A. Williams, joined in briefs.

349 Mass. 303                                                    305

Old Colony Trust Co. v. New England Merchants National Bank of Boston.

CUTTER, J.   The trustee under the will of Louis S. Ross (the testator) seeks instructions concerning the final distribution of the trust fund created under art. Second of the will.   Several respondents have appealed from a decree of the Probate Court, later described.

The testator died in 1927, leaving a will dated November 26, 1926, and a codicil dated November 27, 1926.   By art. Second (a), the testator left all his shares of the capital stock of Central Railway Signal Company (the company) to a trustee in trust to pay his widow $2,000 a month "and from the balance of the net income, if any, to pay the sum of One Hundred Dollars monthly during their respective lives to each of William S. Whitman . . . Lester B. Watson . . . and William F. Bacon . . . [and] to pay the balance of the net income if any thereafter remaining, one-half to my said wife during her life, and one-half to said Whitman, Watson and Bacon, share and share alike during their respective lives."   The distribution to be made at the death of the testator's widow was directed by art. Second (b) set out in part in the margin,[1] as are the relevant

---

[1] The words in brackets refer to a beneficiary mentioned in the codicil (see fn. 2).   The letters [A] to [F], inclusive, in brackets are inserted solely for convenient reference to the language immediately following such letters, respectively.   The provision reads, in part, "(b) Upon the decease of my said wife, said trustee shall distribute the trust fund, free and discharged of any trust, as follows: [A] Forty-five per cent thereof to be divided share and share alike between said Whitman, Watson and Bacon, and [B] the balance thereof to be divided share and share alike between Frank A. Buckley, J. Wiley Edmands, Walter L. Wedger, Otto Bemisderfer, Frank Slaney, Albert H. Swing, and William E. Kelly [and one Ralph L. Longden], all now in the employ of the . . . Company, or between those of said Buckley, Edmands, Wedger, Bemisderfer, Slaney, Swing and Kelly [and Longden] then living; and [C] in case of the decease before distribution of either of said Whitman, Watson and Bacon, his share shall be distributed to those of said Whitman, Watson and Bacon then surviving.   Said Whitman, Watson, Bacon, Buckley, Edmands, Wedger, Bemisderfer, Slaney, Swing and Kelly [and Longden], or the survivors of them, before receiving their respective shares of said stock, shall execute a mutual agreement that none of them . . . shall sell any of his shares of said stock until after he shall have offered to sell the same to the others in portions pro rata with their then holdings, at the then book value of said stock.   It is my desire that the said Whitman, Watson and Bacon shall continue to be members of the Board of Directors of said company.   [D] In case my said trustee shall during the life of my said wife desire to sell any of the stock held in trust, it shall transfer and deliver, free and discharged of any trust, to each of said Whitman, Watson and Bacon, or the survivor of them, stock of the book value of twenty thousand dollars ($20,000), one-half to be common stock and one-half to be preferred stock,

provisions of the codicil.[2]

Two (Whitman and Watson) of the three persons mentioned first in art. Second (b) as beneficiaries (see language following [A] in fn. 1) were directors of the company. The third, Mr. Bacon, was its clerk. The seven persons next mentioned (see language following [B] in fn. 1) were employees of the company, who, together with Longden (added by the codicil, fn. 2) are hereinafter referred to as the eight employees. The language following [D], governing sale of the company's stock during the life of the testator's widow, never became operative. The second and separate paragraph of art. Second (b), containing the language following [E] and [F], appears to be possibly inconsistent with the language following [B] and [C] in the first paragraph of art. Second (b). For convenience this second paragraph is referred to as the ultimate provision. The residue (see art. Fourth[3]) the testator gave to nine persons "in case they respectively survive me."

---

and the trustee shall then offer to sell to the said Whitman, Watson, Bacon, Buckley, Edmands, Wedger, Bemisderfer, Slaney, Swing, and Kelly [and Longden], pro rata with their then holdings, at the proposed sale price, the stock which it proposes to sell: if any of said persons shall decline to purchase and shall wish to sell his then holdings of stock, the trustee shall make no sale unless it effects a sale at the same price of such person's holdings. The trustee shall in no case sell at one time less than thirty per cent (30%) of stock held in trust.

"[E] In case the said Watson and Bacon shall have deceased before receiving their share in said distribution, said shares shall be distributed to said Whitman, Buckley, Edmands, Wedger, Bemisderfer, Slaney, Swing and Kelly [and Longden], share and share alike, but [F] in case any of said Whitman, Buckley, Edmands, Wedger, Bemisderfer, Slaney, Swing and Kelly [and Longden] shall have deceased, his shares shall be distributed to his then heirs at law; such distribution in any case to be free and discharged of any trust" (emphasis supplied). Then followed a spendthrift provision.

[2] Article First of the codicil provides as follows: "First: Whereas Ralph L. Longden . . . has recently come into the employ of the . . . Company, I hereby amend subdivision (b) of article 'Second' . . . by inserting the name of Ralph L. Longden after the word Kelly wherever the word Kelly occurs . . . provided, however, that said Longden shall not share in any distribution or benefits thereunder in case my trustee in its discretion shall deem his participation thereunder not to be for the best interest of the trust fund."

[3] "Fourth: All the . . . residue . . . of my property . . . I give to the following persons, share and share alike, in case they respectively survive me: H. Wilson Ross . . . Emma E. Lothrop . . . Harriet A. Hodges . . . Lida M. Savory . . . George W. Ross . . . Perley R. Williams . . . Bessie A. Williams . . . Henry A. Fox . . . and Joseph A. Webber . . . ." All of these persons, except Fox and Webber, were first cousins of the testator.

The testator's widow died on January 4, 1963. Whitman, Watson, and Mr. Bacon were then dead. Of the eight employees Edmands, Bemisderfer, and Longden then survived.[4] The others left then living heirs.

The testator at his death owned all but thirty-four of the 1,659 outstanding common shares of the company. All of the eight employees and Whitman were employees of the company in 1926 and at the testator's death. He regarded them as personal friends[5] and was acquainted with the families of many of them. Mr. Bacon and Watson were men of means and did not depend upon the company as their principal source of livelihood. Whitman was full time treasurer of the company and of its predecessor from 1923 on, and was dependent upon his earnings.

In the Probate Court a decree was entered ordering distribution of (a) fifteen per cent of the trust fund to Whitman's heirs; (b) one eighth of thirty per cent of the trust fund to (1) Whitman's heirs, and (2) to each of the eight employees except Longden, or their respective heirs; and (c) one seventh of fifty-five per cent of the trust fund to each of the eight employees except Longden,[6] or their respective heirs. Most of the evidence, which is reported, was documentary and no facts seem to be disputed. We are thus in essentially the same position as the probate judge to decide the case. See *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 4. The probate judge filed a report of material facts.

1. The provisions of art. Second (b) are confused and in various respects seem somewhat contradictory. Because of the imprecise use of language this is not a case in which any substantial weight can be placed upon the particular words used. It would serve no useful purpose to discuss

---

[4] Edmands and Longden have since died and their respective executors have been substituted as parties.

[5] Wedger, one of the eight employees, was a close neighbor and friend.

[6] Longden was excluded wholly from any distribution. Discussion of this exclusion, and of the relevant circumstances, appears in part 5 of this opinion, *infra.*

at length the elaborate arguments made by the several respondents concerning this will which is unlikely to have a duplicate. We have tried to determine from the instrument as a whole the general intention of the testator and to give effect to that intention so far as the language permits. See *Wheeler* v. *Kennard,* 344 Mass. 466, 469. Except with respect to Longden, we have reached the same conclusions as did the probate judge.

The will, viewed as a whole, differentiates sharply between the testator's shares in the company and all his other property. By art. First he gave to his widow all his property except his shares in the company, to enjoy for one year after his death, and, at the expiration of the year, if she should then be living (as she was), he gave her outright all the residue of his property, except the shares of the company. Those shares were placed in the trust under art. Second, of which the widow was the principal life beneficiary and of which Whitman, Watson, and Mr. Bacon were to receive a portion of the income during their respective lives.

Subject to the interest of the widow for her life, the testator thus provided for persons associated with the company. The three (Whitman, Watson, and Mr. Bacon) whom the testator expected to remain as, or become, directors of the company were given somewhat preferential treatment, probably as a continuing incentive to good management. Eight other valued employees were given favorable but separate benefactions, apparently partly as a reward and partly as an incentive to good performance. If the widow had died shortly after the testator's death, these gifts would have transferred to employees, officers, and directors the enterprise which they had served. Watson and Mr. Bacon, both well to do, were to take no share of the principal of the trust fund unless they should survive the testator and his widow. Whitman, in some circumstances at least, was to be treated more favorably than all the others, doubtless because, as compared with Watson and Mr. Bacon, he depended on his earnings as a full time employee

349 Mass. 303                                               309

Old Colony Trust Co. *v.* New England Merchants National Bank of Boston.

of the company. It thus was reasonable to give to him not only the benefits left to prospective directors but also, in all respects, to treat him as well as other full time company employees. The final residuary provision seems designed principally to deal with undisposed of property in the event that the widow did not live one year after the testator's death.

2. We hold that, when Whitman, Watson, and Mr. Bacon all died, their respective shares of forty-five per cent of the trust fund (see language following [A], fn. 1) did not pass to the eight employees by reason of the gift of "the balance thereof" (see the language following [B], fn. 1). We think that the words "the balance thereof" really meant fifty-five per cent of the trust fund. Although in other contexts, the word "balance" could be interpreted as referring to, or at least as including whatever was not effectively disposed of by the gift of the forty-five per cent share (cf. *Chase* v. *Dickey,* 212 Mass. 555, 565; *Crocker* v. *Crocker,* 230 Mass. 478, 481; *Casey* v. *Genter,* 276 Mass. 165, 170–172), here the term appears to be used only to describe a separate defined share of a trust fund.

3. Various respondents contend that the ultimate provision (see fn. 1, language following [E] and [F]) relates only to the language (following [D], fn. 1) of art. Second (b) dealing with a possible sale (during the widow's life) of the company shares held by the trust. As we read it, the will does not so limit the language. Even if the ultimate provision seems to be in conflict with the dispositions of the forty-five per cent and fifty-five per cent shares mentioned in the first paragraph of art. Second (b), the ultimate provision is not in terms made inapplicable to those two dispositions. The words (following [E], fn. 1) "before receiving their share in said distribution" seem more readily to refer to final distribution of the trust fund at the widow's death than to the transfer of company shares (see language following [D] in fn. 1) in the event of a sale. Except for the gift of shares of a book value of $20,000 to each of Whitman, Watson, and Mr. Bacon, the language

following [D] in fn. 1 provides only for selling stock to Whitman and the eight employees. This would not have been a "distribution" of any part of the trust fund.

4. The provision (following [C], fn. 1) that "in case of the decease before distribution of either of . . . Whitman, Watson and Bacon, his share shall be distributed to those . . . then surviving" may conflict with the language of the ultimate provision (following [E], fn. 1). Similarly there may be inconsistency between the gift (see language following [B], fn. 1) to the eight employees or "those . . . then living" and the words of the ultimate provision following [F] in fn. 1. No application of all the several provisions, or other resolution of these possible inconsistencies, seems an entirely happy solution. We, like the probate judge, feel that the best solution available is to apply the ultimate provision, which at least indicates the final expressed statement of the testator's intention.[7] See *Williams* v. *Taylor,* 276 Mass. 349, 359–360. See also *Shattuck* v. *Balcom,* 170 Mass. 245, 251; *Turnbull* v. *Whitmore,* 218 Mass. 210, 214–215; Restatement: Property, § 246. This appears to be consistent with the general intention shown by the will as a whole.

5. From the pleadings, it appears that one of the eight employees, Longden, "was a dominant individual in the operation of Central Railway Signal Company, Inc., a corporation which acquired the assets of . . . [the c]ompany," and "that in the case of *Central Railway Signal Company, Inc.* v. *Longden,* 194 F. 2d 310 (1952) the United States Court of Appeals for the . . . [Seventh] Circuit

---

[7] This has the effect of treating the gifts (see language following [A] in fn. 1) to Whitman, Watson, and Mr. Bacon as vested equitable interests, subject (1) to being divested in favor of the survivor or survivors of these three, if at the death of the testator's widow one or more of these three beneficiaries should then be living, and (2) to being divested as provided in the ultimate provision, if no one of these three should then be living, so that Whitman's share, in that event, would go to his then heirs at law, and Watson's and Mr. Bacon's shares would go to the eight employees and Whitman. Similarly this would treat the words, "or between those of said Buckley . . . [and others] then living" (see language after [B], fn. 1), as merely indicating that any survivors of the eight employees living at the death of the testator's widow would take directly, whereas the shares of then deceased members of the group of eight employees would go to their "then heirs at law" by virtue of the ultimate provision.

affirmed judgment for such successor corporation against . . . Longden for alleged breaches of fiduciary duties while acting as president and director of . . . [the] purchasing corporation; such breaches allegedly having consisted of diverting corporate opportunities of Central Railway Signal Company, Inc. to a corporation owned by . . . Longden.'' The language of the codicil (see fn. 2) provides that Longden ''shall not share in any distribution . . . in case my trustee in its discretion shall deem his participation thereunder not to be for the best interest of the trust fund.'' The trustee asserted that it was ''unaware of any circumstances whereby participation of . . . Longden, his estate or his heirs in the distribution, now to be made, would not be for the best interests of the trust fund'' but that it ''brings this [Federal court] judgment . . . to the attention of the [c]ourt in the event this [c]ourt should for any reason deem . . . [the trustee's] decision . . . to be erroneous as a matter of law.''

Although there are no findings concerning the Federal court case, there seems to be now no real dispute about the facts concerning that case, alleged in the petition and admitted by most of the answers. The record shows that in 1931 the company sold to a successor corporation all of its assets and that the trustee had received in liquidation of the shares of the company held in trust by it (all but forty-one shares of the outstanding preferred stock and all but thirty-four shares of the outstanding common shares) ''a distributive portion of the proceeds of'' the sale. By September 28, 1931, the trustee had ''disposed of all securities which it owned in the [s]uccessor'' corporation. The events described in the Federal court opinion related to the successor corporation. These events (by which Longden and another took for themselves a corporate opportunity which belonged to the successor corporation) apparently occurred not earlier than 1942. See 194 F. 2d 310, 315.

The codicil (fn. 2) gave to the trustee a discretionary power affirmatively to decide that Longden's participation in any distribution or benefits under art. Second (b) would

"not . . . be for the best interest of the trust fund." The trustee did not exercise that discretion, which in any event was not unlimited.[8] It would have been subject to judicial revision if the power had been exercised "arbitrarily, capriciously, or in bad faith," or without "serious and responsible consideration," or with disregard of fiduciary standards of judgment apparent from the applicable instrument. See *Copp.* v. *Worcester County Natl. Bank,* 347 Mass. 548, 551; *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 350–351.

There is no indication in the record that the trustee had any adequate cause to exclude Longden from the distribution. The trustee's petition shows that it considered the matter and saw no reason for excluding Longden or his heirs. In the circumstances, this determination was in conformity with the standards for the trustee's action apparent from the codicil. The events which led to the Federal court decision occurred about a decade after 1931, when the trust ceased to have any interest in the successor corporation. The conduct of Longden in 1942 and thereafter has not been shown to have had any effect at all upon "the best interest of the trust fund." In the circumstances, a contrary determination by the trustee would have exceeded its powers. The probate judge was in error in excluding Longden and his heirs from participating in the trust fund.

6. After the last survivor of Whitman, Watson, and Mr. Bacon died, a question arose concerning the distribution of the portion of the income formerly paid to these three per-

---

[8] The standard to govern the trustee's action is apparent from art. First of the codicil (fn. 2). When the codicil was executed, Longden had recently come to work for the company, although as the probate judge found, he had previously been an independent auditor for the company. The testator seems to have been in doubt whether Longden was going to be a success as a full time employee and gave the trustee this somewhat vaguely expressed power to prevent distributions (by sale during the life of the trust, or otherwise) of stock of the company to one whose activities might turn out to be detrimental to the company's success and thus to producing income for the trust and hence for its primary life beneficiary, the testator's widow. The reason for the power ceased when the trust ceased to own shares of the successor corporation.

sons under art. Second (a). On June 6, 1957, upon a petition for instructions concerning the proper disposition of this income, a decree was entered that such income ''be accumulated and distributed together with the principal on the death of'' the testator's widow. No appeals were taken from this decree, which we interpret as making a final disposition of the undistributed income. It is binding upon the parties. This undistributed, accumulated income is to be regarded as part of the corpus of the trust fund, and is to be distributed as such.

7. The decree of the Probate Court is to be modified to apply to the accumulated income (as well as the principal) of the trust fund and to permit Longden's executrix to share in the distribution of thirty per cent of the trust fund and in fifty-five per cent of the trust together with the other persons named in that decree as so sharing.[9] As so modified, the decree is affirmed. Costs and expenses in this court and in the Probate Court are to be in the discretion of the Probate Court.

*So ordered.*

---

[9] The final paragraph of the decree as revised would then read in substance, ''that the trustee distribute to the heirs of William S. Whitman fifteen per cent of the trust fund (which shall include any income thereon accumulated in accordance with the decree dated June 6, 1957); to the executor of the will of J. Wiley Edmands, to Otto Bemisderfer, to the heirs of William S. Whitman, to the heirs of Walter L. Wedger, to the heirs of Frank Slaney, to the heirs of Albert H. Swing, to the heirs of William E. Kelly, to the executrix of the will of Ralph L. Longden, and to the heirs of Frank A. Buckley, each, one ninth of thirty per cent of the trust fund; and to the executor of the will of J. Wiley Edmands, to Otto Bemisderfer, to the heirs of Walter L. Wedger, to the heirs of Frank Slaney, to the heirs of Albert H. Swing, to the heirs of William E. Kelly, to the executrix of the will of Ralph L. Longden, and to the heirs of Frank A. Buckley, each, one eighth of fifty-five per cent of said trust fund.''