**Dennis A. MERRILL and Walter O. Merrill, in their capacities as two of the three Co-Executors of the Last Will and Testament of Newell M. Merrill, deceased; Dennis A. Merrill and Walter O. Merrill in their capacities as Trustees of the Trust purported to be established by Item 3 of the Last Will and Testament of Newell M. Merrill, deceased; Dennis A. Merrill; Walter O. Merrill; Judith I. Yarling; Richard Dennis Merrill; Kathryn Jo Anderson; Margaret Yarling Ruegg; Cynthia Lou Rink; and Virginia Beth Yarling, Appellants (Petitioners Below),**

v.

**Wayne O. WIMMER, Co-Executor of the Estate of Newell M. Merrill, deceased; Barbara Jean Merrill; and the unborn grandchildren of Newell M. Merrill, deceased, Appellees (Respondents Below),**

**Pamela Sue Yarling, Appellee (Petitioner Below),**

**Erpha B. Merrill, Appellee (Non-Participating Interested Party Below).**

**No. 2–1282A424.**

Court of Appeals of Indiana, Fourth District.

Sept. 13, 1983.
Rehearing Denied Oct. 19, 1983.

Dan R. Winchell, Baker & Daniels, Indianapolis, Philip S. Cooper, Busby, Austin, Cooper & Farr, Anderson, for appellants.

Larry E. Swick, Wimmer, Lockwood & Swick, Elwood, for Wayne O. Wimmer.

Stephen D. Clase, Braddock & Clase, Anderson, attorney of appellee-guardian ad litem.

CONOVER, Presiding Judge.

Appellants, the majority of beneficiaries under the will of Newell M. Merrill (Newell), appeal the trial court's decision construing Newell's will.

We reverse.

ISSUE

Did the trial court err by modifying some trust provisions and upholding others under the rule against perpetuities?

FACTS

In 1970, Newell executed a will containing a residuary trust. Essentially, it devised the income to his three children, Judith, Dennis, and Walter, during their lives. As to distribution of the corpus, item 3(E) of Newell's will read as follows:

E. That when my youngest grandchild reaches the age of twenty-five (25) years, said Trust shall terminate as to two-thirds (⅔) of the corpus of said Trust, and that said two-thirds (⅔), together with the accumulated income to be credited to said two-thirds (⅔) interest, shall be divided as follows, to-wit: One-Third (⅓) shall be divided one-half (½) to my daughter, Judith I. Yarling, and one-half (½) to her children, share and share alike; One-Third (⅓) shall be divided one-half (½) to my son, Dennis A. Merrill, and one-half (½) to his children, share and share alike; One-Third (⅓) of the corpus of said Trust, together with any accumulated income, to be credited to said one-third (⅓) interest, shall be continued in Trust for my son, Walter O. Merrill, and he shall have the income from this Trust for and during his natural life and upon his death, if he has bodily issue, then one-half (½) of his one-third (⅓), in Trust, shall go to his bodily issue and the other one-half (½) of the one-third (⅓), in Trust, or all of said one-third (⅓), in Trust, in the event he has no bodily issue, shall go to my grandchildren, living at the time of the termination of said Trust, share and share alike.

Newell died in 1977. Appellants petitioned the court to construe the will.

The trial court, adopting the probate commissioner's findings, held the provisions regarding the corpus's distribution to Judith, Dennis and their children were invalid under the rule against perpetuities. It modified the trust by (a) deleting the condition of distribution of the remainder when the youngest grandchild reached 25 years, and (b) awarding one-third of the corpus each to Judith and Dennis outright. It upheld the entire trust provision regarding Walter.

Appellants appeal.

Reversed.

## DISCUSSION AND DECISION

 In probate cases concerning the competence of a testator or where undue influence is alleged, our standard of review requires us to view the facts most favorable to the appellee.[1] Here, however, we are asked to review the trial court's judicial construction and modification of a will. No witness credibility is involved. The will speaks for itself, as well to us as to the trial court. Therefore, we are not bound by the trial court's construction. We review the case *de novo,* but if we find its construction is reasonable and consistent with the testator's intent, we will affirm.[2]

The trial court found the residuary clause as written violates the rule against perpetuities as to Newell's children Judith and Dennis.

 "An interest in property shall not be valid unless it must vest, if at all, not later than twenty-one [21] years after a life or lives in being at the creation of the interest." Ind.Code 32–1–4–1. Under the rule, all vesting must be done during the period of the rule. *Bailey v. Bailey,* (1967) 142 Ind.App. 119, 232 N.E.2d 372. The possibility of vesting after the time of the rule, not only the probability, will void the gift. *Id.*

 Here, it is possible the youngest grandchild may reach the age of 25 years more than 21 years after the death of the lives in being, Newell's children, at the creation of the interests. While the youngest grandchild living at the time of trial was sixteen, Newell's children are all still alive. We are required to presume they are still capable of having more children. *Reasoner v. Herman,* (1922) 191 Ind. 642, 134 N.E. 276. Therefore, the class of beneficiaries is not closed.

Such class must close within the period of the rule. L. Simes & A. Smith, *The Law of Future Interests* § 1265 (2d ed. 1956) [hereinafter *Simes* ]. Here it may not close until after the period prescribed in the rule. Under the will's terms, it was possible for one or more of Newell's children to outlive him (as they did), and then have a child which would not reach the age of 25 within 21 years of Newell's child's death. Therefore, the possibility exists that grandchild's interest[3] would not vest within the time required by the rule. For that reason, the entire gift fails. *Simes.*

Appellants concede the proposed distribution of two-thirds of the corpus to Judith, Dennis and their children when the youngest grandchild reached 25 violates the rule against perpetuities, Ind.Code 32–1–4–1. They argue, however, the trial court erred by (a) eliminating the provision for payment of the trust's income to Judith and Dennis for life, (b) accelerating the distribution of two-thirds of the corpus to Judith and Dennis, and (c) upholding the entire provision regarding Walter. We agree.

There are several guidelines used by a court when construing a will.

---

1. *See Kozacik v. Faas,* (1968) 143 Ind.App. 557, 241 N.E.2d 879.

2. This general approach has been adopted by courts in Alabama (*Gibson v. Jones,* (1975) 293 Ala. 616, 308 So.2d 692), California (*Estate of McKenna,* (1981) 118 Cal.App.3d 66, 174 Cal. Rptr. 84; *Estate of Austin,* (1980) 113 Cal. App.3d 167, 169 Cal.Rptr. 648), Colorado (*Meier v. Denver United States National Bank,* (1967) 164 Colo. 25, 431 P.2d 1019), Florida (*In re Rogers' Estate* (Fla.Dist.Ct.App.1965) 180 So.2d 167), Iowa (*In re Herring's Estate* (Iowa 1978) 265 N.W.2d 740; *Oxley v. Oxley* (Iowa 1978) 262 N.W.2d 144), Kansas (*In re Miller's Estate,* (1960) 186 Kan. 87, 348 P.2d 1033), Massachusetts (*Old Colony Trust Co. v. New England Merchants National Bank of Boston,*

(1965) 349 Mass. 303, 207 N.E.2d 899), Nevada (*Concannon v. Winship,* (1978) 94 Nev. 432, 581 P.2d 11), Ohio (*Poe v. Sheehan,* (1958) 106 Ohio App. 413, 151 N.E.2d 660), Tennessee (*McFadden v. Blair,* (1956) 42 Tenn.App. 434, 304 S.W.2d 93), and Wisconsin (*In re McWilliams' Estate,* (1977) 78 Wis.2d 328, 254 N.W.2d 277).

3. The grandchild's interest may be viewed as an executory interest, which springs into being at a future date and cuts short the prior estate, C. Smith & R. Boyer, *Survey of the Law of Property* (2d ed. 1971), or a vested remainder subject to open which under these facts is considered contingent, *Simes,* and therefore both are subject to the rule against perpetuities. *Id.*

[T]he cardinal and paramount rule is to ascertain the intention of the testator and give it effect as long as it is not prohibited by law or violates public policy. This intention may be ascertained by the language or the words of the will itself and an examination of the entire will or from the four corners thereof. (Citations omitted.)

*Weishaar v. Burton,* (1962) 132 Ind.App. 597, 604, 179 N.E.2d 211, 214–15.

A will should be construed to prevent intestacy if it can be done without doing violence to the intent of the testator.

It is the settled rule that when the striking of an invalid part results in defeat of the main and dominant purpose of the testator, incidental provisions which constitute with it the entire testamentary scheme must fall with it.

Conversely it is the settled rule that where the testator's dominant intent is legal and valid, an invalid, separable, incidental provision will be stricken out and the provisions carrying out the dominant intent of the testator will be sustained. (Citations omitted.)

*Sipe v. Merchants Trust Co.,* (1941) 109 Ind. App. 566, 571, 34 N.E.2d 968, 970–71. The court may not rewrite the will for the testator. *Szulkowska v. Werwinski,* (1941) 109 Ind.App. 511, 36 N.E.2d 948.

■ By creating life estates for his children and by providing the corpus was not to be distributed until his youngest grandchild reached 25, Newell made his underlying intent clear, he did not want his property to pass immediately to his children. He wanted the grandchildren to share but only when they reached 25, presumably an age at which he believed they would be mature enough to handle their inheritance wisely. Given this as his intent,[4] the trial court erred by extinguishing the grandchildren's interests and giving a full two-thirds of the corpus immediately to Judith and Dennis.[5] While we try to avoid intestacy, the trial court here has rewritten Newell's will. This it may not do.

■ We also find the trial court erred by upholding the provision of the trust regarding Walter. While we agree this section does not violate the rule against perpetuities, it was an integral part of Newell's testamentary distribution scheme and may not stand alone. All the specifications for the distribution of the corpus and its income were contained in one section and separated by semi-colons, not periods. The appellees argue Newell intended to create three trusts, one for each child. However, the document itself only refers to "this Trust", singular. Such format demonstrates the testator intended this distribution scheme to be interrelated.

The trial court's construction clearly subverts the testator's intent and cannot stand, but that is not the end of the matter. In an attempt to give effect to both Newell's intent and the rule against perpetuities, we will examine these provisions in light of the doctrine of equitable approximation. Because the cy pres doctrine, the doctrine of equitable deviation, and the equitable doctrine of approximation have often been confused and not clearly distinguished, we will discuss each separately before determining whether the doctrine of equitable approximation may be appropriately applied in this case.

---

**4.** The intent of the testator is revealed by the will itself in its entirety, in essence from the "four corners" of the document. *Weishaar v. Burton, supra,* 179 N.E.2d at 211.

**5.** This was error for another reason. In *Sipe v. Merchants Trust Co.,* (1941) 109 Ind.App. 566, 34 N.E.2d 968, this court set out the situations in which a court may accelerate an interest in property. However, a condition precedent to an acceleration must be present, that is, the interest to be accelerated must follow a void interest. *See also Lefler v. Hoffman,* (1942) 112 Ind.App. 387, 44 N.E.2d 1022. Here, the trial court attempted to accelerate the corpus distribution to Judith and Dennis. However, the corpus was not to be distributed until after a valid income distribution scheme. The void interest here was in the corpus distribution plan itself, not the preceding interest. Therefore, the trial court's revised corpus distribution plan does not constitute a valid scheme to accelerate.

■ The cy pres doctrine has been codified in Indiana. The pertinent statute states:

> If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible, impracticable, or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust need not fail, but the court may direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.

Ind.Code 30–4–3–27. This principle has been consistently applied only to charitable trusts. See *Quinn v. Peoples Trust & Savings Co.,* (1945) 223 Ind. 317, 60 N.E.2d 281; *Sendak v. Trustees of Purdue University,* (1972) 151 Ind.App. 372, 279 N.E.2d 840. Since the trust created here is private, not charitable, we may not apply the cy pres doctrine.

■ Another tool available to courts when construing trusts is the doctrine of equitable deviation. Indiana law provides

> (a) Upon petition by the trustee or a beneficiary, the court shall direct or permit the trustee to deviate from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. In that case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust, or may prohibit the trustee from performing acts required by the terms of the trust.

Ind.Code 30–4–3–26(a).

> Under this doctrine the court will permit the trustees to deviate from the mechanical means of administration of the trust where circumstances not known or foreseen by the testator have come about, and where such change in circumstances in combination with the administrative means provided in the trust would defeat

or substantially impair the accomplishment of the intended trust purpose.

*Sendak v. Trustees of Purdue University,* (1972) 151 Ind.App. 372, 379–80, 279 N.E.2d 840, 845.

The present facts do not fit into this framework. Here, the beneficiaries do not merely seek a "deviation" from one of the terms of the trust. They seek a construction of the will which fails on its face because it violates the rule against perpetuities. The correction of a provision or the filling in of an omission in the will constitutes more than permission to deviate from an administrative detail. For an example of mechanistic provisions from which deviation is permitted under this doctrine, see *Sendak v. Trustees of Purdue University,* (1972) 151 Ind.App. 372, 279 N.E.2d 840. There the trial court removed restrictions from a trust which loaned money to Purdue students. Over time these restrictions had stifled the charitable use of the fund. This doctrine, too, is not applicable to the trust provisions before us because mere deviation is not involved.

However, the doctrine of equitable approximation is available in this case. That doctrine is generally defined in BLACK'S LAW DICTIONARY 632 (rev. 4th ed. 1968), as follows:

> EQUITABLE DOCTRINE OF APPROXIMATION. This doctrine differs from "Cy pres doctrine" in purpose and application. The last mentioned doctrine applies where an apparent charitable intention has failed, whether by an incomplete disposition at the outset or by subsequent inadequacy of the original object, and its purpose is to give a cy pres or proximate application to testator's intention, whereas the "equitable doctrine of approximation" merely authorizes a court of chancery to vary the details of administration, in order to preserve the trust, and carry out the general purpose of the donor. *National Bank of Greece v. Savarika,* 167 Miss. 571, 148 So. 649, 654.

This doctrine has been used frequently in recent years to give effect to a testator's intent when his general purpose, i.e. to cre-

ate a plan for the distribution of his assets after his death, cannot be effectuated due to some other legal principle such as the rule against perpetuities coming into play. *See In re Estate of Chun Quan Yee Hop,* (1970) 52 Hawaii 40, 469 P.2d 183; *Carter v. Berry,* (1962) 243 Miss. 321, 140 So.2d 843; *Berry v. Union National Bank* (W.Va.1980) 262 S.E.2d 766 (referred to as equitable modification). In each of these cases, the supreme courts of the respective states found the time of distribution was the least critical contingent and therefore modified the possible date of distribution from 25 to 21 years after the death of lives in being and thereby saved the trusts. *See also Edgerly v. Barker,* (1891) 66 N.H. 434, 31 A. 900 (where the court reduced the grandchildren's age requirement from 40 to 21 years).

■ Basically, this doctrine is applied to private trusts in the same manner and for the same policy reasons as the cy pres doctrine is used in regard to charitable trusts. This is a rule designed to help eliminate the harsh effect of the rule against perpetuities.[6] Both the cy pres and equitable approximation doctrines are applied to effectuate the testator's intent to the extent possible. This being the ultimate goal of will construction in Indiana, we adopt this tool to reach that goal to the fullest extent possible under the circumstances.[7]

■ Contrary to the cases discussed above, we do not believe the time of distribution was the least critical contingent of this trust. We believe the grandchildren's age requirement of 25 years before distribution of the corpus was to be made indicates Newell believed the trust's distributees then would be mature enough to make responsible decisions concerning the property distributed to them. A distribution of Newell's property only to those grandchildren alive at his death seems to be the scheme least disruptive of his apparent intent.

Therefore, we hold the term "grandchild" appearing in the first line of item 3(E) of Newell's will shall be construed to mean "grandchild alive at my death."[8] We believe that construction does the least violence to testator's intent. Under this construction, the class of beneficiaries the will creates closed at the time of Newell's death, and makes the lives of the grandchildren then alive the measuring lives under the rule against perpetuities. Thus, the rule is not violated, and Newell's distribution scheme in the main is saved. This construction most closely approximates the intent of the testator.[9]

Reversed with instructions to enter judgment accordingly.

STATON and SHIELDS, JJ., concur.

6. Our decision in this case should not be read as emasculating the rule against perpetuities. On the contrary, we endorse the rule and its purposes. However, under these facts, we are complying with the rule which mandates us to effectuate the testator's intent to the extent possible by applying the doctrine of equitable approximation.

7. Other states' legislatures have addressed this problem by statutorily allowing the modification and reformation of documents creating property interests so they comply with the rule against perpetuities. *See* Cal.Civ.Code § 715.5 (West 1979) (allowing reformation to comply with rule if in accord with testator's general intent); Ill.Ann.Stat. ch. 30, § 194(c)(2) (Smith-Hurd 1979) (the violating vesting date shall be reduced to 21 years); 13 Ky.Rev.Stat.Ann. § 381.216 (Baldwin 1972) (allows for reformation to save transfer; also adopts "wait and see" doctrine); Ohio Rev.Code Ann. 2131.08(C)

(Page 1976) (adopts "wait and see" doctrine); and Tex.Civ.Stat.Ann. § 1291b (Vernon 1978) (allows reformation in accord with testator's intent). See other states named in *Berry v. Union National Bank* (W.Va.1980) 262 S.E.2d 766, n. 8.

8. For a similar result, see *Estate of Grove,* (1970) 70 Cal.App.3d 355, 138 Cal.Rptr. 684, where the court construed the will to include only grandnieces and nephews alive at the testator's death.

9. While this construction does eliminate any interest of after-born grandchildren, all of Newell's children are in their mid to late 40's. Although we presume they are still able to have children, *Reasoner v. Herman,* (1922) 191 Ind. 642, 134 N.E. 276, the possibility of additional children, without more, does not constitute so grave a harm, we believe, as to offset the benefits of this construction.