WILL OF WALKER: HARRIS and another, Appellants, vs. BURGER and others, Respondents.

*November 6—December 5, 1950.*

66

For the appellants there were briefs by *Affeldt & ·Licht-sinn* and *Morris Stern,* attorneys, and *Eldred Dede* of counsel, ·all of Milwaukee, and oral argument by *Mr. George A. Affeldt* and *Mr. Dede.*

For the respondents there was a brief by *Walter A. John* and *George J. Mangan* of Milwaukee, for Minnie A. Burger, administratrix *de bonis non,* and Marshall & Ilsley Bank, as trustee; *James T. Guy* of Milwaukee, guardian *ad litem* for Josephine Harris and Louise Harris, minors; and *Urban R. Wittig* of Milwaukee, guardian *ad litem* for the · unborn grandnephews and grandnieces of Isabel R. Walker, deceased, and oral argument by *Mr. John* and *Mr. Mangan.*

BROWN, J.   The direction to divide the interest from the trust estate among the great nephews and great nieces annually shows the testatrix's intent that the estate should be kept productive of income. This necessarily requires investment of cash assets and management of all investments. Over so long a trust period as that specified by the testatrix she must have anticipated that changes affecting the productivity of original investments would occur. Without some expression of hers to the contrary it cannot be supposed that she meant her trustee to be powerless to alter or adjust the corpus of the trust estate to retain its productivity. If she meant him to make and to manage investments, as obviously she did, she must, when she has not expressed herself otherwise, be deemed to have given him the ordinary powers of management. Of these one of the most common and necessary is

the discretion to shift investments by purchase and sale as the conditions affecting them make advisable.

Upon such reasoning, in which we concur, the learned county court found that it was "the intent of the testatrix, the creator of said trust, that such power exist in the trustee of said trust, though not expressly granted by the language of her will," in so far as the securities and other personal property are concerned. The court, however, declined to apply the reasoning to the real estate saying, in a written opinion,

". . . the weight of authority seems to be that trustees have no power to sell land for the purpose of reinvesting the proceeds unless that power is expressly granted by the will. This limitation is no doubt a vestige of feudal conception of landholding which did not consider land a commodity of barter and sale as it is in modern society. The court will follow the weight of authority and hold that no power of sale, either express or implied, is contained in this will authorizing the trustee to sell the real estate contained in said trust."

Thereupon the court made findings that a grant of power to sell the real estate could not be implied from the language of the will. In this finding which, of course, is actually a conclusion of law we consider that the court was in error. It is self-evident that the testatrix herself did not distinguish between personalty and realty in her creation of the trust or her instructions to the trustee. As far as the language of her will is concerned the estate is a unit, however composed, and whatever she said applied alike to both classes of property. We do not think any distinction can properly be drawn because she used the word "interest," which technically would apply only to the income from personalty, not realty, but which (still technically) would include only the return on the bonds and debentures in her estate and would leave out the dividends from her shares of corporate stock (appraised at

$18,646.07,—not a negligible amount), as well as the farm rents. In this instance her term "interest" must be taken as the equivalent of "income." Testatrix's language, then, being equally applicable to her personal and her real property, and making no distinction between them, cannot produce opposite results unless there is some significant difference in the character of her real-estate holdings to warrant the belief that she meant them to be differently treated, or some rule of law prevents implying a power to sell realty. The trial court relied on such a supposed rule of law.

The farm in question had not been occupied by the testatrix or any member of her family for about twenty-five years. The number of beneficiaries both at the time she executed her will and when she died, to say nothing of the possibility of after-born children, precludes the supposition that she wanted the farm preserved as a home for them. There is no indication that it had any sentimental value to her. She had formerly contracted to sell it and was now leasing it to tenants. There was no reference to it in the will. All the circumstances lead to the conclusion that she viewed it as an asset of no different standing than her cash, stocks, and bonds. Conceding that English cases and the earlier American cases which follow them support the court's conclusion, we note that their doctrine arose in, and was appropriate to, a rigid society where family lands were preserved intact to be handed down to the eldest son; but the reason for treating that which is a mere investment in land differently from one in securities or other form of personalty disappears in our very flexible society where land is an article of commerce and the rule of primogeniture has never been recognized. Under the circumstances of this will and of the estate with which it deals we find no reason to say that the testatrix withheld from her trustee powers in respect to one sort of property which

she had granted, by implication, in the other. Respondent has cited the following passage from Prof. Scott's work on trusts, which we consider expresses the modern and the better American law:

"The courts today are more ready to find that a power of sale is conferred upon the trustee than were the courts in England at common law. In the case of land, at least, the English courts were reluctant to infer an intention to give trustees a power of sale, since land was not ordinarily dealt with as a subject of commerce, passing freely from hand to hand, but was rather handed down in the family from generation to generation whenever possible. In England at common law the inference was that the trustee had no power to sell land unless it could be affirmatively determined from the language of the trust instrument as interpreted in the light of all the circumstances that the settlor intended to confer such a power. It is fair to say that in the United States today the inference is that the trustee has a power to sell land unless it appears from the language of the trust instrument as interpreted in the light of all the circumstances that the settlor intended that the land should be retained in the trust." 2 Scott, Trusts, p. 1022, sec. 190.

We hold, therefore, that the will contains an implied discretionary power in the trustee to sell the realty, as well as the personalty, of the trust estate.

Though the land or the personal property may thus be alienated by the trustee, of course the proceeds of the sale are subject to the trust and appellant argues that the residuary clause of the will is void because the trust, itself, runs beyond the permitted period. New York, for instance, has a statute, 40 McKinney's Consol. Laws of New York, Personal Property Law, art. 2, sec. 11, forbidding suspension of the absolute ownership of personal property for more than a designated period, and it may be assumed that the present trust would offend such a statute. Wisconsin, however, has no compara-

ble legislation. Only secs. 230.14 and 230.15, Stats., exist, and they have often been construed to the effect that they prohibit only the suspension of power to alienate, not the suspension of absolute ownership. If the trustee has power to sell, which he may exercise within the time specified by the statute, the trust is not void under our statutes even though the trust in the converted fund is perpetual. *Holmes v. Walter* (1903), 118 Wis. 409, 421, 95 N. W. 380; *Becker v. Chester* (1902), 115 Wis. 90, 115, 91 N. W. 87, 91 N. W. 650; *Will of Butter* (1941), 239 Wis. 249, 255, 1 N. W. (2d) 87. Appellant submits that it is undesirable for trusts to endure for longer periods than that set by the statute on alienation and that when, in 1925, Wisconsin took from the above New York statute the words "Limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property" and inserted them in sec. 230.14, we imported the New York law, of which they formed a part, forbidding restraint on the absolute ownership of property. Concerning the desirability of prolonged trusts we express no opinion. That is a matter for the legislature. Concerning the alleged importation into Wisconsin law of the omitted portion of the New York statute we are very sure that the legislature did no such thing. With the whole New York statute before it, the fact that the Wisconsin legislature left out the part concerning suspension of ownership argues strongly that our legislature did not want it and, by taking only the sentence quoted, directed Wisconsin courts to apply to future or contingent interests in personal property the prevailing *Wisconsin* rules applicable to such estates in real property. Such rules, as the Wisconsin cases already cited show, do not confine the duration of trusts to any prescribed period.

We conclude then, that a discretionary power of sale is given to the trustee by implication arising from the language of the will and from the circumstances of the case; that the

power pertains to the sale of both real and personal property in the trust estate; that because of such power of sale the absolute power of alienation has not been suspended by the provision identified *"Third (4)"* of the will; and that such section is a valid testamentary disposition of both the real and the personal property. The judgment of the learned county court is therefore affirmed in so far as it dealt with personalty and reversed in so far as it dealt with realty.

Other issues of law are treated in the briefs but the decision sustaining *Third (4)* makes it unnecessary to discuss them.

The briefs of both parties exceeded fifty pages and each has applied according to rule and to sec. 251.264, Stats., for the allowance of costs of printing his entire brief. The questions involved have been difficult and the briefs on each side have been unusually helpful and are no longer than required for the careful analysis of which we have had the benefit. We allow respondent the costs applied for and regret that it is not possible to recognize appellant's assistance to us in like manner.

*By the Court.*—Judgment affirmed as it affects personalty and reversed as it affects realty and cause remanded for further necessary proceedings consistent with the opinion. Costs for printing respondent's entire brief allowed.