BETTY BOX FERGERSTROM AND JOSEPH E.
FERGERSTROM *v.* HAWAIIAN OCEAN VIEW
ESTATES, A NEVADA CORPORATION.

No. 4675.

MAY 14, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case comes to us on interlocutory appeal from an order
denying the defendant's motion for summary judgment. The
plaintiffs' complaint alleges that they, husband and wife, pur-
chased a parcel of land from the defendant, a corporation, for
the construction of a house. The defendant's employees took pic-
tures of one of the plaintiffs and of the house at various stages
of construction. The defendant used the photographs and the
plaintiffs' name in sales brochures, in advertisements in publica-
tions, and in television commercials. The complaint alleged that
the defendant's acts constituted an actionable invasion of their
right of privacy. Count I alleged:

> The use of said photographs and the names of the plaintiffs
> as aforesaid was without the prior knowledge and consent of
> plaintiffs and constitutes multiple continuing and multifarious
> violations of plaintiffs' right of privacy, by reason of which
> plaintiffs have been held up to public exposure and ridicule,
> their right of privacy has been invaded by a continuous stream
> of defendant's "sales prospects" coming on to plaintiffs' prop-
> erty, using plaintiffs' facilities and generally bothering plain-

tiffs in their said home, causing humiliation, annoyance and embarrassment to plaintiffs to their damage in the sum of $25,000.

The second count alleged a cause of action for unjust enrichment. The final count requested $25,000 punitive damages on the ground that the defendant has refused to discontinue using the plaintiffs' photographs and name. The defendant moved for summary judgment on the grounds that there is no common law action for invasion of privacy and that the legislature has not provided for such an action.

The defendant contends that since the ancient common law did not afford a remedy for invasion of privacy, and there is no case in Hawaii recognizing such a right, only the legislature can provide for such a cause of action.[1] The magnitude of the error in the defendant's position approaches Brobdingnagian proportions. To accept it would constitute more than accepting a limited view of the essence of the common law. It would be no less than an absolute annihilation of the common law system. This spectre of judicial self-emasculation has pervaded one case in which the court accepted this line of argument. *Brunson* v. *Ranks Army Store,* 161 Neb. 519, 73 N.W.2d 803 (1955).[2]

A case decided, 4 to 3, by the New York Court of Appeals best articulates the arguments against judicial recognition of an action for invasion of privacy, *Roberson* v. *Rochester Folding Box Co.,* 171 N.Y. 538, 64 N.E. 442 (1902). The majority opinion presents five basic arguments. First, there was no precedent in the

---

[1] We are disinclined to decide an important issue merely on the basis of the number of states adopting a given approach. But some weight must be accorded to the overwhelming recognition of a common law right of privacy by all but a few states. Between 1941 and 1964, the number of states recognizing a cause of action for invasion of privacy increased from 8 to 31. *See* Annot. 14 A.L.R.2d 750 (1950) and 2 Supp. 172 (1965). We are inclined to agree with Professor Kalven's observation that:

It takes a special form of foolhardiness to raise one's voice against the right of privacy at this particular moment in its history. . . . Its development is a bit of legal culture to be proud of: it shows that the "eternal youth" of the common law is still green; it is a reflection of civilized sensitivity to subtle harms . . . . Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?* 31 Law & Cont. Prob. 327 (1966).

[2] The opinion has been roundly criticized, Perlman, *The Right to Privacy in Nebraska: A Re-examination,* 45 Neb. L. Rev. 728 (1966).

ancient English common law. Second, the injury was of a purely mental character. Third, a "vast amount of litigation" would be encouraged. Fourth, the distinction which would have to be drawn between public and private characters could not be effectively drawn. Fifth, it might unduly restrict free speech and press. However persuasive these arguments may have been in 1902, they amount to little more than straws in the wind today.

On the issue of lack of precedent, there is a substantial question whether the common law provided no basis for recognizing a right of privacy, *Roberson* v. *Rochester Folding Box Co., supra* at 565-66, 64 N.E. at 450-51 (Gray, J. dissenting) ; Warren and Brandeis, *The Right to Privacy,* 4 Harv. L. Rev. 193 (1890). In any event, the absence of precedent is a feeble argument.[3] The common law system would have withered centuries ago had it lacked the ability to expand and adapt to the social, economic, and political changes inherent in a vibrant human society. "[T]he genius of the common law, upon which our jurisprudence is based, is its capacity for orderly growth." *Lum* v. *Fullaway,* 42 Haw. 500, 502 (1958). Indeed, tort law as we know it today bears little, if any, resemblance to tort law in its early development, when a writ held the key to entry into the room of justice.[4] This court recognized the relatively new tort of intentional infliction of emotional distress although there was no more precedent in the ancient common law for that tort than for the protection of the right of privacy, *see Fraser* v. *Blue Cross Animal Hosp.,* 39 Haw. 370 (1952).

As for the argument that the injury is purely mental in

---

[3] Justice Cardozo very appropriately described the situation which results from judges automatically deferring to precedent:

Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the altar of regularity. Cardozo, *Growth of the Law* 66 (1924).

The defendant asks us to follow the same principle although applied inversely.

[4] Although the law of trespass was reasonably well established in the common law by the thirteenth century, no private action was available for fraud. The absence of a precedent did not prevent the common law from recognizing that tort. Pollock and Maitland, *History of English Law* 534-35 (1899).

character, even if it were true it would not be persuasive. In the *Fraser* case, the court recognized a tort which was defined in terms of infliction of solely mental injury.

The argument that recognizing the tort will result in a vast amount of litigation has accompanied virtually every innovation in the law. Assuming that it is true, that fact is unpersuasive unless the litigation largely will be spurious and harrassing. Undoubtedly, when a court recognizes a new cause of action, there will be many cases based on it. Many will be soundly based and the plaintiffs in those cases will have their rights vindicated. In other cases, plaintiffs will abuse the law for some unworthy end, but the possibility of abuse cannot obscure the need to provide an appropriate remedy.[5]

As to the need to distinguish between public and private figures, the difficulty of drawing a line is no bar to the recognition of a cause of action.[6] But such a distinction is irrelevant in this case since the defendant has appropriated the plaintiffs' name and personality for its own benefit in advertising. Even were the defendant able to establish at trial that the plaintiffs were public figures, that would not be a defense to this cause of action. Furthermore, distinguishing between private and public figures is not as difficult a task as the defendant suggests.[7]

Finally, the recognition of a right not to have one's name and picture used without his permission as part of an advertising campaign does not involve a restriction on free speech and press. The only communications the defendant made in which it used the plaintiffs' name and pictures were for the purpose of selling

---

[5]Only in the unusual case where parties actually injured are unlikely to sue and where those likely to sue are not those whose interests are of primary concern can the possibility of abuse be given substantial weight in determining whether to recognize a new cause of action, Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 Law & Cont. Prob. 326, 338-39 (1966).

[6]The difficulty in discovering the line dividing conduct satisfying that required under the reasonable man standard and conduct failing to do so has not prevented development of a cause of action for negligence.

[7]The United States Supreme Court has relied on precisely such distinctions in determining whether actions for defamation of character unconstitutionally infringe on First Amendment freedoms, Curtis Pub. Co. v. Butts, 388 U.S. 130 (1967).

its product. Whatever limitations on other aspects of the right of privacy may have to be recognized because of the need to protect the First Amendment freedoms we hold so precious, the infringement alleged in this case does not raise the issue.

We hold that the plaintiffs' complaint states a cause of action for invasion of the right of privacy. We go no further than to indicate that protection is available for appropriation of name or picture for commercial purposes. We do not now decide whether other aspects commonly included under a general right of privacy will receive similar protection.[8] These issues remain to be decided in subsequent cases raising them, preferably after a trial on the merits.

Affirmed.

*L. N. Nevels, Jr.* (*Nevels and Chang* of counsel) for defendant-appellant.

*E. D. Crumpacker* for plaintiffs-appellees.

---

[8]*See* Kalven, *supra* note 5.