IN THE MATTER OF THE ESTATE OF CHUN QUAN
YEE HOP, ALSO KNOWN AS C. Q. YEE HOP,
DECEASED.

No. 4881.

. MAY 14, 1970.

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ.,
AND CIRCUIT JUDGE KABUTAN IN PLACE OF
MARUMOTO, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

This case presents the question whether the orthodox
common law Rule Against Perpetuities will be strictly applied to nullify a testamentary trust which violates the
Rule or whether some part of the trust or all of it will be
allowed to take effect. We choose to resolve this issue by
applying the doctrine of equitable approximation (also
known as the *cy pres* doctrine) so that the trust will not
violate the Rule or its underlying policies and the testator's expressed desires will be satisfied.

The facts have been stipulated by the parties. The
testator, Chun Quan Yee Hop, died on August 11, 1954
leaving a will executed on September 28, 1953. His wife,
who is still living, his four sons and twelve daughters survived him. When this action was filed in 1967 his issue
including children, grandchildren, and great grandchil-

dren numbered 135, of whom not less than 85 were living when the testator died.

The portion of the testator's will in question provided that: "This trust shall cease and determine upon the death of my wife, Chun Lai Shee, or thirty (30) years from the date of my death, whichever shall last occur, . . . ." At the termination of the trust, the trust estate including principal and accumulated income was to vest in and be transferred to the beneficiaries with three-fourths of the trust estate going to the survivors of the four sons and the lawful issue of any deceased son, and the remaining one-fourth of the trust estate going to the survivors of the twelve daughters and the lawful issue of any deceased daughter.

On the advice of counsel that the trust might be in violation of the Rule Against Perpetuities, the trustees filed a petition in the circuit court asking for instructions. After all interested parties were duly notified and represented and after a hearing, the trial court determined that there was a well-founded doubt upon the following questions of law which were reserved to this court for answer and decision pursuant to HRS § 642-1:

Whether, under the Rule Against Perpetuities,

(1) the trust is valid in its entirety and all provisions can be carried out in accordance with the language of the will;

(2) the trust is partially valid and partially invalid, and, if so, in what respect it is valid and in what respect it is invalid, and what the effect is of such partial invalidity on the overall validity of the trust and the responsibilities of the trustees in the administration of the trust; and

(3) the trust is invalid in its entirety, and, if so, what are the responsibilities of the trustees in the administration of the trust.

In resolving an issue which has bedeviled lawyers and

42

engaged legal scholars since Lord Nottingham began it all in the *Duke of Norfolk's Case* in 1682,[1] we are aided by the very able briefs of counsel and a wealth of law review articles and treatises on the subject.[2] Fortunately, we are not confronted by some of the more chimerical characters and situations dealt with by Professor Leach in his writings. We are simply dealing with a testamentary trust which might ultimately vest in the residuary legatees at a time beyond a specified life in being (the testator's widow) and twenty-one years thereafter.[3] Since the testator's wife might have died within nine years after his death, there was no assurance at the time of his death that the trust estate would vest within the life of his wife or 21 years thereafter. The will expressly says that the trust is to cease and determine on the death of the testator's wife or thirty years from his death, *whichever shall last occur.* The trust, therefore, violated the orthodox Rule Against Perpetuities.[4]

[1] 3 Ch. Cas. 1, 49, 22 Eng. Rep. 931, 960 (1682).

[2] The leading article contributing to reform of the Rule Against Perpetuities was Professor Leach's famous *Perpetuities in a Nutshell,* 51 Harv. L. Rev. 638 (1938). The article was updated in Leach, *Perpetuities: The Nutshell Revisited,* 78 Harv. L. Rev. 973 (1965). A recent and comprehensive book on the subject is R. Lynn, *The Modern Rule Against Perpetuities* (1966). A comprehensive bibliography concerning perpetuity reform is found in *Perpetuity Legislation Handbook* 32-34 (3d ed. 1967) prepared by the Committee on Rules Against Perpetuities, ABA Section of Real Property, Probate and Trust Law.

[3] John Chipman Gray's revised statement of the orthodox Rule is found in his *The Rule Against Perpetuities* § 201 (4th ed. R. Gray 1942); "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

[4] Since we decide the case on the grounds of equitable approximation *(cy pres),* we do not reach the merits of other forms of validating the trust which were ably presented by counsel. These included (a) holding the alternative contingencies "separable" and striking the invalid thirty year contingency; (b) applying the "wait and see" doctrine; (c) finding the gifts to the children and their respective issue to be separate gifts and treating each gift separately as to the time of vesting; and (d) holding the distribution of trust income to each of the children and their issue to be valid for at least twenty-one years on the basis that the trust provides for annual gifts of income. We do not intend to preclude such arguments and others from being raised in the future.

The Rule Against Perpetuities is said to be part of the English common law and is therefore applicable in Hawaii. *Fitchie* v. *Brown,* 18 Haw. 52, 69 (1906), *aff'd* 211 U.S. 321 (1908) (upholding the validity of a testamentary trust whose duration was measured by 42 lives in being plus 21 years). There is no legislation in Hawaii on the subject except the general provision of HRS § 1-1 which states that with exceptions not relevant to this case "[t]he common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, . . . ." This "common law" spoken of by the statute does not remain in a somnolent and sedentary state. We have repeatedly maintained that "[t]he genius of the common law, upon which our jurisprudence is based, is its capacity for orderly growth." *Lum* v. *Fullaway,* 42 Haw. 500, 502 (1958); *Fergerstrom* v. *Hawaiian Ocean View Estates,* 50 Haw. 374, 376, 441 P.2d 141, 143 (1968).

Since the Rule Against Perpetuities is a creature of judicial construction, any growth of the law with respect to it is purely one of judicial wisdom unless the state legislature chooses to act.[5] As a judge-made rule of law, it is not so firmly ensconced in Hawaii that this court cannot deal with it like any other rule of judicial origin which must change with the times.[6]

It should be no surprise that this court has held on several occasions that various testamentary trusts have complied with the common law Rule Against Perpetuities using accepted techniques of judicial construction to keep the trust from violating the Rule. *Queen's Hospital* v.

---

[5] A comprehensive study of state legislation can be found in *Perpetuity Legislation Handbook, supra* note 2.

[6] See *Tamashiro* v. *DeGama,* 51 Haw. 74, 450 P.2d 998 (1969) (parent-child tort immunity abolished); *Lemle* v. *Breeden,* 51 Haw. 426, 462 P.2d 470 (1969) (implied warranty of habitability in lease agreements); *Pickard* v. *City & County,* 51 Haw. 134, 452 P.2d 445 (1969) (licensee-invitee status abrogated).

*Hite,* 38 Haw. 494, 506 (1950) (ambiguity in will resolved in favor of trust's validity) ; *Manufacturer's Life Ins. Co.* v. *Von Hamm-Young Co.,* 34 Haw. 288 (1937) (creation of interest under a life insurance trust at death of testator). Yet no case in this jurisdiction has heretofore presented the problem whether a testamentary trust, which clearly violates the Rule Against Perpetuities because of a term of years extending beyond the permissible twenty-one years, is to be judicially salvaged in order to effectuate the testator's intent.

We do not mean to say that the Rule Against Perpetuities has outlived its usefulness. Unlike so many rules of property which were handed down from feudal England, this rule is of continuing vitality. This court said in *Manufacturer's Life Ins. Co.* v. *Von Hamm-Young Co.,* 34 Haw. 288, 293 (1937) of the Rule Against Perpetuities: "This rule was not of feudal origin but has its support in the practical needs of modern times, and was devised in order to restrain the tying up of property in future estates for an unreasonable period of time."

The policy against tying up of property in future estates has a number of important aspects. One is the freeing of wealth so that it can be channelled into open commerce without subjecting it to the limited discretion of a trustee. Another aspect is that the rule is conducive to giving the ultimate recipient complete power of management and disposition over that which is to be his. He may then sink or swim on his own rather than be subordinated to the paternalistic control of a trustee. The last and most important policy is that of letting the living control the wealth here on earth, rather than allowing those who once owned it and have since passed away to retain some powers over that wealth. These reasons all support the proposition that it is wise policy to loosen the dead hand's grip upon the wealth passed from one

generation to the next. Dukeminier, *Perpetuities Revision in California: Perpetual Trusts Permitted,* 55 Calif. L. Rev. 678, 691 (1967); L. Simes, *Public Policy and the Dead Hand* 58 (1955).

The policy against the tying up of property in future estates is not inconsistent with the application of the doctrine of equitable approximation of a testamentary trust. Limiting an invalid term of thirty years to the twenty-one year period prescribed by the rule does no violence to any of the above policies or to the testator's general intent. The judicial recognition of a decedent's general testamentary intent has been recognized in an analogous body of law which applies the doctrine of equitable approximation to a charitable trust which would otherwise fail. If it is impossible, impractical or illegal to carry out the specific terms of a charitable trust in which the settlor has indicated a general charitable purpose, many courts will authorize the substitution of another charitable scheme within the testator's general purposes. Restatement (Second) of Trusts § 399 (1959). We should also keep in mind the analogies mentioned by Chief Justice Doe in *Edgerly* v. *Barker,* 66 N.H. 434, 462, 31 A. 900, 909-10 (1891): "The feudal doctrine of forfeiture for and by a conveyance of a larger interest than the grantor has is no part of our common law. . . . A lease for 40 years, made under a power to lease for 21 years, is good for 21. . . . Under a statute restricting to a term not exceeding 21 years the time for which a tenant for life can be empowered to lease, a testamentary gift to a tenant for life of a power to lease for 63 years is not void. If he makes a lease for more than 21 years, it is void for the excess, and no more." (citations omitted.)

Our decision should not be influenced by the fact that it was the testator's intent to distribute his estate among his children and their issue according to a plan which

may appear to some as lopsidedly favoring his male prog-eny. This was, of course, his right. The wishes of the testator could have been accomplished exactly as he wished without violating the Rule if the attorney who drafted the will had specified that the trust was to continue until 21 years after the death of the last survivor of his wife and all of his issue living at the time of his death but not to exceed 30 years from the date of his death. Without the last mentioned limitation the trust could have continued for nearly 100 years from the date of his death without violating the Rule.

We are not alone in judicially adopting the doctrine of equitable approximation. The courts of New Hampshire and Mississippi have applied this doctrine in varying degrees and circumstances.[7] The adoption of the rule of equitable approximation is further recommended by an overwhelming number of commentators[8] and, although the doctrine has judicial origins, it has been adopted by a number of state legislatures.[9] We therefore hold that any interest which would violate the Rule Against Perpetuities shall be reformed within the limits of that rule to approximate most closely the intention of the creator of the interest. In the present case, where the testamentary trust violated the rule by providing that the trust "shall cease and

---

[7] Edgerly v. Barker, 66 N.H. 434, 31 A. 900 (1891) : Carter v. Berry, 243 Miss. 356, 140 So.2d 843 (1962).

[8] The *cy pres* doctrine was advanced by Judge James Quarles in 1946 in *The Cy Pres Doctrine: Its Application to Cases Involving the Rule Against Perpetuities and Trusts for Accumulation*, 21 N.Y.U. L. Rev. 384 (1946). This was a revision of his earlier article in 1904, *The Cy Pres Doctrine with Reference to the Rule Against Perpetuities—An Advocation of Its Adoption in All Jurisdictions*, 38 Am. L. Rev. 683 (1904). A current exposition can be found in Professor Browder's article, *Construction, Reformation, and the Rule Against Perpetuities*, 62 Mich. L. Rev. 1 (1963). See also Fletcher, *A Rule of Discrete Invalidity: Perpetuities Reform without Waiting*, 20 Stan. L. Rev. 459 (1968).

[9] Cal. Civ. Code § 715.5 (1963) ; Idaho Code Ann. § 55-111 (1957) ; Ky. Rev. Stat. § 381.216 (1963) ; Mo. Stat. Ann. § 442.555 (1966) ; 27 Vt. Stat. Ann. § 501 (1959) ; Wash. Rev. Code § 11.98.030 (1965).

determine upon the death of my wife, Chun Lai Shee, or thirty (30) years from the date of my death, whichever shall last occur, . . .", the thirty year period need only be reduced to twenty-one years in order to bring the trust within the rule. In response to the questions reserved to this court we may then answer that the trust is valid in its entirety and all provisions are to be carried out in accordance with the language of the will with the exception that the trust shall cease and determine upon the death of the testator's wife, Chun Lai Shee, or twenty-one years from the date of the testator's death, whichever shall last occur.

It is so ordered.

*Asa M. Akinaka (Padgett, Greeley, Marumoto & Akinaka* of counsel) for Trustees, petitioners.

*Donald H. C. Low,* Temporary Administrator of Estate of Yee Sing Shun, deceased, *(Nakamura & Low* of counsel) pro se.

*Arthur B. Reinwald (Anthony & Waddoups* of counsel) for Hung Lum Chun, et al., respondents.

*Henry H. Shigekane (Damon, Shigekane & Char* of counsel) for Lee Chun Shee, et al., respondents.

*Wilfred Youth* and *Richard C. Lo (Lo, Youth & Ikazaki* of counsel) for Alsona Wong and Robert J. Chun, respondents.

*Ted T. Tsukiyama,* Guardian ad Litem for the Minor and Unborn Issue of the sons of C. Q. Yee Hop, deceased.

*John Jubinsky (Ashford & Wriston* of counsel) Guardian ad Litem for the Minor and Unborn Issue of the daughters of C. Q. Yee Hop, deceased.

*Edward Y. C. Chun (Fong, Miho, Choy & Robinson* of counsel) for Kwai Dick Chun, respondent.

*Joseph G. K. Wee (Alfred M. K. Wong* on the brief, *Okumura and Takushi* of counsel) for Joseph G. K. Wee, et al., respondents.

DISSENTING OPINION OF KOBAYASHI, J.,
WITH WHOM ABE, J., JOINS.

I dissent.

This case involves a testamentary trust that *clearly* violates the Rule Against Perpetuities, as acknowledged by the majority of the court. It is not a case involving an ambiguity in the will as in *Queen's Hospital* v. *Hite,* 38 Haw. 494 (1950). Neither does it involve a situation wherein the proposition "the law is a ass, a idiot" may be applicable.[1] Thus, this court is confronted with the basic, naked proposition of actually enforcing the Rule Against Perpetuities or of vitiating the vitality of the Rule!

I choose to enforce the Rule under the facts of the instant case. The majority, in its opinion, has now caused this court to be added to the list of appellate courts effectuating an escape to the "harsh" application of the Rule Against Perpetuities. Our attention has been called to the various doctrines relied upon for said escape: such as the *cy pres* doctrine or the doctrine of alternative contingencies that are "separable", both of which are premised on giving effect to the alleged intent of the testator.[2]

The contradiction of such thinking and avoidance is obvious: the proponents following either of the above doctrines must violate the testator's original intent. To say that an approximation of the intent of the testator is given effect is simply begging the question. In essence the majority of the court has "exercised" a power that it does not have: making a new will for the testator. The decision of the majority appears to be strongly influenced by the alleged fact that the attorney for the testator could have done a better job in drafting the will. It is amazing, to say the least, that the court would give substance or rele-

---

[1] Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638 at 645 (1938).

[2] Leach, Perpetuities in a Nutshell, supra.
Leach, Perpetuities: Nutshell Revisited, 78 Harv. L. Rev. 973 (1965).

vancy to the so-called failure of the attorney.

The issue actually boils down to competing "rules" or "policies": rule against remoteness of the vesting of future interests to encourage circulation of property vs. rule of giving effect to the testator's intent because the law abhors intestacy.

It is clear that the two rules or policies are not compatible in this case. As Professor Gray emphatically states:

> "The Rule Against Perpetuities is not a rule of construction, but *a peremptory command of law.* It is not, like a rule of construction, a test, more or less artificial, to determine intention. *Its object is to defeat intention.* Therefore * * * the Rule is to be remorselessly applied."[3] (Emphasis added.)

I fail to see the logic in the majority's *ratio decidendi:* that *"limiting* an *invalid* term of thirty years to the twenty-one year period prescribed by the rule *does no violence* to any of the above policies [of the Rule Against Perpetuities] or to the testator's general intent." (Emphasis added.) What a tenuous reasoning to rely on to attempt to justify a gross violation of the Rule Against Perpetuities. It is ironic indeed for the majority to claim that in actuality it is helping the Rule Against Perpetuities to "grow"; that the common law "does not remain in a somnolent and sedentary state."

To say, as the majority does, that the Rule Against Perpetuities has not outlived its usefulness and yet to refuse to apply it in the face of a clear violation is the height of contradiction and illogic. Such "logic" adds to the volumes of confusing court-made law. If no justification exists in reason or on grounds of public policy for the continued enforcement of the Rule, this court should, with

---

[3] Gray, The Rule Against Perpetuities § 629 (3d ed. 1915).

directness, do away with the Rule.[4]

The Supreme Court of California, in *Lucas* v. *Hamm,* 56 Cal. 2d 583, 364 P.2d 685, 15 Cal. Rptr. 821 (1961), *cert. denied,* 368 U.S. 987 (1962), held that the Rule Against Perpetuities is so perplexing, confusing and fraught with concealed traps that as a matter of law it could not be negligence for an attorney to violate it!

The undiluted application of the Rule Against Perpetuities was initially rejected in certain jurisdictions because the application of said Rule would have "shocked the conscience of justice".

One of the chief arguments expressed by one of the proponents of the trust in the instant case is that the testator's sons and the children of the sons of the testator will receive less if the Rule Against Perpetuities is strictly enforced. It is most difficult for this writer to agree that such a reason is sufficient to "shock the conscience of justice". In the instant case greater justice and equity are achieved if the Rule Against Perpetuities is strictly applied.

Justice Abe joins in this dissent.

---

4 See Simes, "Is the Rule Against Perpetuities Doomed?", 52 Mich. L. Rev. 179 (1953) ; Fletcher, "A Rule of Discrete Invalidity: Perpetuities Reform Without Waiting", 20 Stan. L. Rev. 459 (1968) ; Leach, Perpetuities Legislation, 108 U. Pa. L. Rev. 1124 (1960).

See also Will of Walker, 258 Wis. 65, 45 N.W.2d 94 (1950).