CRABTREE, J. T. C.
This is a sales tax case wherein plaintiff seeks review of a “Revised Final Determination” of defendant Director dated December 18, 1974, imposing an assessment of $628,255.31 (exclusive of interest and penalties) against plaintiff pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B--1 et seq. The period covered by the assessment is August 12,1971 to June 30,1973. Both parties have moved for summary judgment pursuant to R. 4:46.
The facts essential to disposition of the motions may be briefly stated.
From 1966 through and beyond the taxable periods in issue plaintiff has been engaged in the business of servicing and overhauling aircraft engines at its place of business in Millville, New Jersey. Upon completion of the work, which is performed entirely within this State, plaintiff ships the serviced or overhauled engines to its customers at their out-of-state locations.
The New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. (the act), was passed on April 27, 1966, effective with *338 respect to transactions therein specified occurring on or after July 1,1966. L. 1966, c. 30, § 31. On or about June 28,1966 the New Jersey Sales and Use Tax Bureau issued a press release containing 213 questions and answers concerning the act’s interpretation. The release, reproduced in Report 162 of Commerce Clearing House New Jersey Tax Reports of July 11, 1966, included the following response to a question addressed to treatment of repair charges imposed with respect to property delivered to an out-of-state customer: “Charges for repairs where the articles upon which the work is performed are delivered, upon completion, pursuant to contract, to a purchaser outside the State for use outside the State are exempt from the sales tax.”
On August 12, 1971 the Division of Tax Appeals promulgated its decision in the case of Fisher-Stevens, Inc. v. Taxation Division, Docket S.T. 109, holding that all sales of direct mailing services performed in New Jersey on mail to out-of-state addresses were subject to sales tax. The decision was affirmed by the Superior Court, Appellate Division. Fisher-Stevens, Inc. v. Taxation Division, 121 N.J.Super. 513, 298 A.2d 77 (App.Div. 1972), certif. den. 62 N.J. 575 (1973). In the State Tax News, a bi-monthly newsletter published by defendant and aimed at practitioners and large taxpayers, it was announced, in consecutive late-1973 issues, that the sales tax applied to repair services performed in New Jersey even though the serviced property was delivered outside of New Jersey for use outside of this State.
The New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1 ef seq. (the APA), was enacted effective September 1, 1969. None of the rule-making provisions of the APA, including the requirement of notice and hearing before the promulgation of rules or regulations, were followed in connection with defendant’s publication of the aforementioned issues of State Tax News.
The issues are:
1. Is compliance with the APA provisions concerning notice and hearing of proposed agency actions indispensable to the validity of a tax assessment under the Sales and Use Tax Act?
*339 2. Did defendant’s failure to comply with the notice and hearing provisions of the APA deny plaintiff due process of law?
3. Did the act, as it stood during the taxable periods in issue, authorize the imposition of a sales tax upon repair services performed in New Jersey on property delivered outside New Jersey for use outside this State?
4. Does the imposition of a sales tax upon repair services to property destined for out-of-state delivery violate the Commerce or Equal Protection Clauses of the United States Constitution? [1]
I. The APA Issue
Plaintiff urges the invalidity of the assessment because it is based upon a rule not adopted in accordance with the APA. The “rule” which plaintiff contends was improperly adopted was the statement appearing in consecutive issues of State Tax News concerning defendant’s interpretation of the act as applied to repair services performed in New Jersey on property destined for out-of-state shipment. The legal infirmity of defendant’s action, says plaintiff, was the failure to give public notice and hearing of the State Tax News announcement, as required by N.J.S.A. 52:14B-4(d).
Plaintiff’s argument is essentially a tightly constructed — and superficially compelling — Aristotelean syllogism whereunder plaintiff equates the State Tax News announcements with the APA definition of “rule” (N.J.S.A. 52:14B-2(e)), posits the inclusion of the Division of Taxation within the definition of “state agency” (N.J.S.A. 52:14B-2(a)), alludes to defendant’s failure to comply with the notice and hearing requirements (N.J.S.A. 52:14B-4)), and then concludes that, as no rule is valid unless adopted in substantial compliance with those requirements (N.J. S.A. 52:14B-4(d)), the assessment here complained of is a nullity.
Unfortunately for plaintiff, its elegant syllogism must yield to the powers explicitly granted defendant by the taxing statute and settled judicial authority construing those powers. The defendant is authorized by § 24 of the act:
*340 1. To make, adopt and amend rules and regulations appropriate to the carrying out of this act and the purposes thereof;
and
6. To assess, determine, revise and readjust the taxes imposed by this act .... [N.J.S.A. 54:32B-24(1), (6)]
Defendant’s authority to assess taxes is thus independent of the requirement to adopt rules and regulations, and his assessing authority is in no way contingent upon the promulgation of rules and regulations. This conclusion is supported not only by a sensible construction of the quoted portions of § 24 of the act, but also by an imposing line of judicial authority. Securities and Exchange Comm’n v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); R. H. Macy & Co. v. Taxation Division, 77 N.J.Super. 155, 185 A.2d 682 (App.Div. 1962), aff’d o. b. 41 N.J. 3, 194 A.2d 457 (1963); In re Heller, 73 N.J. 292, 374 A.2d 1191 (1977). In Chenery the court upheld an SEC determination (disapproving a corporate reorganization plan) that was reached on an ad hoc basis and not by way of a formal regulation. The court stated that the absence of a general rule did not invalidate the SEC decision:
To hold that the Commission had no alternative in this proceeding but to approve the proposed transaction, while formulating any general rules it might desire for use in future cases of this nature, would be to stultify the administrative process. That we refuse to do.
... The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise. .. . Not every principle essentia! to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity. [332 U.S. at 201-202, 67 S.Ct. at 1579-1580]
The Chenery principle was applied in Macy, a case especially apposite here since it involved tax assessments. In that case the court acknowledged the authority of the Director of the Division *341 of Taxation to impose assessments in compliance with a statutory standard, without prior adoption of a rule or regulation,[2] saying:
In any event, insofar as the argument before us is premised on the position that the Division of Taxation was powerless to exercise its statutory power to determine fair valuations of Macy’s inventories as assets, in accordance with sound accounting principles, without first adopting a general rule that all department stores must report and are to be taxed on the base of Kifo inventories, the contention is without merit. First, without more evidence, we cannot say that such a rule of unvarying application in all such cases would necessarily be appropriate. Second, and more important, there is, as we have decided, an adequate legislative standard in this act for administrative guidance, and in such case the development of subsidiary rules and principles on a case-by-case basis is not proscribed. [77 N.J.Super. at 180, 185 A.2d 682]
The Macy decision is dispositive of the issue raised by plaintiff. The Legislature, by enacting N.J.S.A. 54:32B-3(b)(2), has delineated the standards to be applied by defendant in determining whether a particular service is subject to sales tax. In light of this standard, the Director was not required to reflect his policies explicitly in the form of a regulation before imposing the assessment in question. As noted in Macy, such a requirement would limit defendant’s capacity to assess taxes, notwithstanding the existence of adequate legislative standards.
The Legislature did not intend that the APA should impose unreasonable restraints upon the assessment of taxes by requiring that the validity of every assessment should be contingent upon the prior adoption of a regulation. Such an interpretation would require defendant to adopt regulations to meet every conceivable contingency that might arise in the context of future tax assessments, and would also jeopardize tax revenues which the Legislature directed the Division of Taxation to collect. The APA was not meant to supplant defendant’s authority to assess and collect taxes, an authority explicitly grant *342 ed to him by N.J.S.A. 54:32B-24(6). Indeed, the APA expressly excludes from its coverage “agency decisions and findings in contested cases,” N.J.S.A. 52:14B-2(e)(3), a category which undeniably embraces tax assessments.
Plaintiff also contends that the publication of defendant’s position in the State Tax News, without notice to plaintiff or the public, as allegedly required by the APA, denied plaintiff due process of law. This contention is not well-founded. While it is true that a taxpayer must be given an opportunity, upon adequate notice, to challenge the validity of an assessment, due process only requires that such opportunity be afforded at some stage before a tax becomes irrevocably fixed as a charge on the taxpayer’s property. Central of Georgia R. R. Co. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134 (1907); 72 Am.Jur.2d, State and Local Taxation, § 782. Plaintiff’s rights to due process are vindicated in the very proceeding hence under consideration; it has availed itself of the right to present its position in a lengthy written brief and extended oral argument thereon. Due process does not extend, however, to the alleged right of public participation by others, Gallup v. Schmidt, 183 U.S. 300, 22 S.Ct. 162, 46 L.Ed. 207 (1902), nor does it require that plaintiff be allowed to press its views as a quasi -legislative proceeding such as a rule-making hearing under the APA. Williams v. Eggleston, 170 U.S. 304, 18 S.Ct. 617, 42 L.Ed. 1047 (1898).
While plaintiff disavows reliance upon an estoppel theory, it appears nevertheless to argue for the application of that theory on the basis of the alleged reversal of defendant’s position with respect to taxability of repair services on property destined for out-of-state delivery. Plaintiff seems to claim detrimental reliance upon defendant’s earlier position, expressed in the June 28, 1966 press release, in that the sales tax was not collected from out-of-state customers prior to the reversal of defendant’s position published in the late 1973 issues of State Tax News. The disputed assessment, of course, covers taxable periods prior to the State Tax News publication of defendant’s position, but *343 those periods did not antedate the date of the Division of Tax Appeals decision in the Fisher-Stevens case (August 12, 1971).
The collection and enforcement of taxes is a strict governmental function and vitally affects the public interest. State v. Erie Railroad Co., 23 N.J.Misc. 203, 42 A.2d 759 (Sup.Ct. 1945). See East Orange v. Livingston, 102 N.J.Super. 512, 522, 246 A.2d 178 (Law Div.1968), aff’d 54 N.J. 96, 253 A.2d 546 (1969). The taxing authority is not bound or estopped by unauthorized acts of its officers, Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 81 A.2d 485 (1951), nor may estoppel be invoked in cases of agency acquiescence or reversals or modifications of prior positions. Illinois Power Co. v. Mahin, 49 Ill.App.M 713, 7 Ill.Dec. 436, 364 N.E.2d 597 (App.Ct.1977), aff’d 72 Ill.2d 189, 21 Ill.Dec. 144, 381 N.E.2d 222 (Sup.Ct.1978); Boswell v. Abex Corp., 294 Ala. 334, 317 So.2d 317 (Sup.Ct.1975). Moreover, a rule or regulation of a state tax commission purporting to exempt a taxpayer or a transaction from tax liability where authority to do so has not been specifically granted by the Legislature cannot operate as an estoppel to collect the tax, even in the case of transactions which have been closed so that the seller cannot collect the tax from the purchaser. Crane Co. v. Arizona State Tax Comm’n, 63 Ariz. 426, 163 P.2d 656 (Sup.Ct. 1945), overruled on other grounds Duhame v. State Tax Comm’n, 65 Ariz. 268, 179 P.2d 252 (Sup.Ct.1947).
Of some relevance here is the long-prevalent judicial attitude in federal tax cases, where claims of estoppel against the Commissioner of Internal Revenue because of his reversal of legal positions to the alleged detriment of taxpayers, have been viewed with a jaundiced eye. The settled rule, applied uniformly to all types of taxes, is that the Commissioner of Internal Revenue is empowered retroactively to correct mistakes of law in the application of the tax laws to particular transactions, even where the taxpayer relied to his detriment on the Commissioner’s mistake. Automobile Club of Michigan v. Internal Revenue Comm’r, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957), reh. den. 353 U.S. 989, 77 S.Ct. 1279,1 L.Ed.2d 1147 (1957); Dixon v. *344 United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965); Martin’s Auto Trimming, Inc. v. Riddell, 283 F.2d 503 (9 Cir., 1960); Davar Products, Inc. v. United States, 245 F.Supp. 460 (S.D.N.Y.1965); 10 Mertens, Law of Federal Income Taxation (1974 rev.), §§ 60.14, 60.16. The rule precluding estoppel against the Commissioner of Internal Revenue is applied even where the reversed determination was originally addressed specifically to the complaining taxpayer and with respect to a particular transaction or series of transactions. Automobile Club of Michigan v. Internal Revenue Comm’r, supra; Massaglia v. Internal Revenue Comm’r, 286 F.2d 258 (10 Cir. 1961).
The underlying rationale is cogently stated in Dixon v. United States, supra:
This principle is no more than a reflection of the fact that Congress, not the Commissioner, prescribes the tax laws. The Commissioner’s rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law. Consequently it would appear that the Commissioner’s acquiescence in an erroneous decision, published as a ruling, cannot in and of itself bar the United States from collecting a tax otherwise lawfully due. [at 85 S.CL 1304]
The rule of the federal cases, resting, as it does, upon considerations of sound administration of the revenue laws, is applicable to the instant case.
As will be seen from the discussion to follow, defendant’s assessment was imposed in compliance with the legislative standard embodied in N.J.S.A. 54:32B-3(b)(2) (dealing among other matters, with a sales tax on repair services to tangible personal property). That standard cannot be vitiated by an erroneous construction thereof by the Division of Taxation, not even where the taxpayer proves detrimental reliance upon such construction. Neither defendant nor any official responsible to him is authorized to waive state tax revenues. Boswell v. Abex Corp., supra.
II. Merits of the Assessment
Plaintiff contends that the activity which triggers application of the sales tax is delivery of the goods upon which the services have been performed, and that, delivery being outside *345 New Jersey, the act does not apply. Defendant, on the other hand, argues that the tax is imposed upon receipts from repair services performed in New Jersey, and out-of-state delivery of the property upon which the services were performed is not relevant. I conclude that defendant’s position is the correct construction of the statute.
N.J.S.A. 54:32B-3 imposes a tax upon:
(b) The receipts from every sale, except for resale, of the following services:
(2) Installing tangible personal property, or maintaining, servicing, repairing tangible personal property . ..
The term “sale” is broadly defined to include “the rendering of any service taxable under this act, for a consideration.” N.J.S.A. 54:32B-2(f). The term “receipt” is defined to include “the charge for any service taxable under this act.” N.J.S.A. 54:32B-2(d).
Ascribing to the words of the statute the ordinary meaning associated with them, and considering the transactional nature of the tax, I conclude that the repair services involved in this case are subject to the sales tax by reason of N.J.S.A. 54:32B-3(b)(2), regardless of the destination of the repaired property following completion of the services. When the performance of an activity is subjected to a sales tax, the place of performance determines the place of taxation. Serodino, Inc. v. Woods, 568 S.W.2d 610 (Tenn.Sup.Ct.1978); Parish of Jefferson v. Ekco-Glaco, 280 So.2d 629 (La.App.1973).
The legislative history of the act reinforces the conclusion that the repair services in issue here are subject to sales tax. The act was drawn from the corresponding New York Sales and Compensating Use Tax Law, L. 1965, c. 93; McKinney’s Consolidated Laws of New York Annotated, § 1101 et seq. New Jersey Bell Tel. Co. v. Taxation Division, 152 N.J.Super. 442, 378 A.2d 38 (App.Div.1977), certif. den. 75 N.J. 594, 384 A.2d 824 (1978). The New York statute provided for imposition of the sales tax upon repair services in language substantially similar to the language *346 of N.J.S.A. 54:32B-3(b)(2). The New York law, however, expressly exempted services performed upon tangible property delivered and used outside the state. § 1115(d). The New Jersey statute included no such exemption until the 1977 amendment (to be hereinafter discussed), notwithstanding the adoption in N.J.S.A. 54:32B-8 of many of the exemptions contained in the New York law.
Where the Legislature adopts a new law, using as a source a statute theretofore enacted in another jurisdiction, but omits a provision of the source statute, the omission is construed as being deliberate. Bank of America v. Webster, 439 F.2d 691 (9 Cir. 1971); Re Walker’s Will, 258 Wis. 65, 45 N.W.2d 94 (Sup.Ct.1950); Beckham v. Hartford Accident and Indem. Co., 137 So.2d 99 (La.App.1962). Indeed, all changes in words and phrasing in a statute adopted from another state are deemed deliberately made with the purpose of limiting, qualifying or enlarging the adopted rule. Martin v. American Potash and Chemical Corp., 33 Del.Ch. 234, 92 A.2d 295 (1952); Sutton v. Duke, 277 N.C. 94, 176 S.E.2d 161 (Supreme Ct.1970).
Section 3(b)(2) of the act, N.J.S.A. 54:32B-3(b)(2) was amended in 1977, L. 1977, c. 54, to exempt from sales tax the transactions in controversy here. The Statement of the Assembly Committee on Taxation appended to the bill (Assembly Bill 1787) read:
The bill proposes to exempt from the sales tax services performed by New Jersey companies on tangible personal property delivered out of state. Because New Jersey is the only State, with the possible exception of New Mexico, that imposes a sales tax on such transactions, it places New Jersey businesses at a considerable disadvantage in maintaining such operations. The imposition of the tax is one which did not occur in the beginning years of the sales tax but was imposed bv interpretation later. Such taxes, when assessed against New Jersey business, in many instances incur a loss because they are unable to collect from customers after the fact. [Emphasis Supplied]
Plaintiff points to the underscored sentence as evidence of the Legislature’s intent to exempt the transactions in issue upon enactment of the act in 1966. I cannot agree.
To begin with, the amendment itself is indicative of a change in the law. It is a well established rule of statutory *347 construction that a change of language in a statute implies a purposeful alteration in substance of the law. Nagy v. Ford Motor Co., 6 N.J. 341, 78 A.2d 709 (1951); Cold Indian Springs Corp. v. Ocean Tp., 154 N.J.Super. 75, 380 A.2d 1178 (Law Div.1977), aff’d 161 N.J.Super. 586, 392 A.2d 175 (App.Div.1978), rev’d on other grounds 81 N.J. 502, 410 A.2d 652 (1980); 1A Sutherland, Statutory Construction (4 ed. 1972), § 22.30 at 178. Secondly, the underscored sentence in the Assembly Committee on Taxation Statement is of little probative value in ascertaining the legislative intent at the time of the act’s passage in 1966. Committee reports which are made after passage of the statute to be construed are of little value, and that value decreases with the elapse of time. 2A Sutherland, op. cit, § 48.06 at 203. Cf. First State Bank of Hudson Cty. v. United States, 599 F.2d 558 (3 Cir., 1979), cert. den. 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980) (subsequent Congress cannot speak for intent of earlier Congress in the enactment of a particular statute).
III. Constitutional Issues
A. Due Process and Equal Protection
Plaintiff claims a violation of the equal protection and due process provisions of the United States and New Jersey Constitutions, in that the act, as applied here, makes an irrational and arbitrary distinction between out-of-state sales of tangible personal property and services performed in New Jersey on property destined for out-of-state delivery, the former being immune from taxation while the latter is taxable.
It is, of course, well settled that a state may not constitutionally impose a sales tax upon the sale of goods delivered to the buyer beyond the taxing state. McLeod v. Dilworth, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1944). Cf. J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938) (gross income tax on out-of-state sales held invalid). It does not necessarily follow, however, that services performed within the taxing state are likewise exempt if the serviced property is delivered beyond the state. The distinction *348 implicitly made by the Legislature is within its constitutional power and does not violate the Equal Protection Clause, since there is a presumptively rational basis for the distinction. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). States are given “large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.” Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973). A strong presumption of constitutionality attends the legislative classification, id. at 364, 93 S.Ct. at 1006, and the party challenging it must negate “every conceivable” basis for the statute, since the statute must be upheld if any state of facts can be reasonably conceived to sustain it. Allied Stores of Ohio, Inc. v. Bowers, supra 358 U.S. at 528, 79 S.Ct. at 441; Robbiani v. Burke, 77 N.J. 383, 391-392, 390 A.2d 1149 (1978); Taxpayers Ass’n of Weymouth Tp., Inc. v. Weymouth Tp., 80 N.J. 6, 39-40, 364 A.2d 1016 (1976).
In' the present case there is no basis for plaintiff’s allegation of an irrational, arbitrary classification by the legislature. The imposition of the sales tax upon all repair services performed in New Jersey is eminently rational as the State’s connection with the rendition of the service is exactly the same whether or not the property is delivered beyond the State.
So much for plaintiff’s equal protection contention. Plaintiff’s due process allegation may be dispatched even more summarily.
The due process requirement is satisfied if there is some nexus, however minimal, between the activity to be taxed and the taxing state. Wisconsin v. J. C. Penney, 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940); Miller Bros. Co. v. Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954). The protection afforded by the state requires that the activity bear a just share of the cost of state government. Western Live Stock v. Revenue Bureau, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938). The aircraft engines were serviced and overhauled by plaintiff entirely within New Jersey and those engines, as well as the *349 property in which they were stored, enjoyed the protection and services provided by state and local government so long as they remained here.
Plaintiff’s equal protection and due process challenges are without merit.
B. The Commerce Clause
Plaintiff alleges a violation of the Commerce Clause of the United States Constitution, Article I, § 8, in that the act, as applied here, unlawfully subjects interstate transactions to an unapportioned direct tax.
State taxation of interstate transactions does not violate the Commerce Clause if it operates to exact “from interstate commerce its fair share of the cost of state government.” Washington Dept. of Revenue v. Association of Washington Stevedoring Co’s., 435 U.S. 734, 748, 98 S.Ct. 1388, 1398, 55 L.Ed.2d 682 (1978). The mere fact that, as in the present case, the transactions are the products of contracts between residents of different states, does not immunize the transactions from state or local taxation. Western Live Stock v. Revenue Bureau, supra. The fact that property which is the subject of the transaction is immediately transported out of the taxing state does not change the result. State Tax Comm’n v. Pacific Cast Iron Pipe Co., 372 U.S. 605, 83 S.Ct. 925, 10 L.Ed.2d 8 (1963).
In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court ruled that a state tax is not an unconstitutional burden upon interstate commerce if (1) there is a sufficient nexus with the state to justify the tax, (2) the tax is fairly related to the benefits provided by the state to the taxpayer, (3) the tax does not discriminate against interstate commerce and (4) the tax is fairly apportioned to local activities. The act, as applied to the transactions here in issue, meets three of these four tests.
The first two tests are covered in the foregoing discussion of plaintiff’s equal protection and due process claims. The *350 third test (nondiscriminatory treatment of interstate transactions) is satisfied if the tax places the same burden upon intrastate commerce. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940). In this case the act applies to all receipts from repair services performed within New Jersey, regardless of whether the purchaser is a resident or non-resident and irrespective of the destination of the serviced property.
The fourth test (fair apportionment to local activities) is intended to avoid multiple taxation of the same transaction by two or more states. The vice to be avoided in the case of transactional taxes (such as sales or gross receipts taxes) is the potential that each state touched by the transaction has an equal right to impose a tax, so that, without protection of the Commerce Clause, the commerce would bear cumulative burdens not imposed upon local commerce. General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); Western Live Stock v. Revenue Bureau, supra; J. D. Adams Mfg. Co. v. Storen, supra. The taxpayer, however, has the burden of proving actual multiple taxation. Standard Pressed Steel v. Revenue Dep’t, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975); General Motors Corp. v. Washington, supra. A finding of duplicative taxes may not rest on speculative grounds. Moorman Mfg. Company v. Bair, 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). The fair apportionment test is satisfied if it appears that no other state could justifiably tax the transaction in question. Fisher-Stevens, Inc. v. Taxation Division, 121 N.J. Super. 513, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973); Corning Laboratories, Inc. v. Iowa State Revenue Dep’t, 270 N.W.2d 463 (Iowa Sup.Ct.1978). Moreover, the imposition of a use tax by another state upon the same transaction does not result in multiple taxation in derogation of the fair apportionment test. International Harvester v. Treasury Dep’t, 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944); Treasury Dep’t v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188 (1941).
*351 Conceivably, the states of destination of the overhauled or serviced aircraft engines impose sales, as distinguished from use taxes, on the purchasers of plaintiff’s services on the basis that delivery, not performance of services, is the taxable event. Alternatively, those states — or some of them — might impose a sales tax on the repair parts used by plaintiff in its work on the aircraft engines. (The affidavit of plaintiff’s vice-president and general manager indicates that, typically, up to 80% of plaintiff’s charges are attributable to the cost of parts used in overhauls.) See State v. Communication Equip. & Contr. Co., Inc., 335 So.2d 123 (Ala.App.1976). Thus, there remains the possibility of actual duplicative taxation.
IV. Conclusion
The Administrative Procedure Act is inapplicable to the actions taken by defendant with respect to its publications in State Tax News and the disputed assessments of sales tax. Defendant’s power to make assessments pursuant to the Sales and Use Tax Act is not contingent upon prior adoption of a rule attended by notice and public hearing.
Moreover, defendant’s failure to comply with the notice and hearing requirements of the APA with respect to rule-making did not deprive plaintiff of due process, nor did its alleged detrimental reliance upon defendant’s earlier position that the disputed transactions were nontaxable estop defendant from assessing and collecting the tax.
Both a sensible construction of the act and the legislative history thereof compel the conclusion that repair services performed within the State upon tangible personal property are subject to sales tax, regardless of the destination of the repaired property following completion of the services.
The aforementioned interpretation of the act violates neither the Due Process Clause nor the Equal Protection Clause of the New Jersey and United States Constitutions.
The act may be violative of the Commerce Clause of the United States Constitution upon a showing of actual duplicative taxation. As this issue was not covered by the summary judg *352 ment motions, there remains an issue of material fact to be resolved at a trial. R. 4:46-2. The parties will be given an opportunity to submit proofs on this issue alone. Those proofs will be directed to the identification of the states to which the serviced aircraft engines were delivered, the nature and quantum of the taxes imposed by statutes of those states upon the transactions in issue here whether any such taxes were actually assessed, the extent of actual collection of such taxes, the applicable statutes of limitation upon assessment and collection of any such allegedly duplicative taxes (where those taxes are claimed to be due but remain unassessed or uncollected), and such other evidence as the parties deem germane to the issue of duplicative or multiple taxation. As stated earlier in this opinion, however, plaintiff bears the burden of proof with respect to such issue.
Plaintiff’s motion for summary judgment is denied. Defendant’s motion for summary judgment is granted with respect to all issues except the duplicative taxation aspect of the Commerce Clause issue, with respect to which defendant’s motion is denied.

 While plaintiff advanced no contentions, either in its brief or in oral argument, concerning the Commerce Clause or the Equal Protection Clause, both the complaint and the pretrial order entered November 5, 1979 raise those issues and I will therefore deal with them in this opinion.

 Although the Macy case was decided seven years before enactment of the APA, the New Jersey Constitution provided, during the tax years at issue (1956, 1957 and 1958) that no rule or regulation of a state agency, department, officer or authority could become effective until it was filed with the Secretary of State, NJ.Const., Art. V, § IV, par. 6, a provision similar to that embodied in N.J.S.A. 52:14B 4(d), cited earlier in the text.